### BANKERS SECURITIES CORPORATION v. SECURITIES AND EXCHANGE COMMISSION.

No. 8661.

Circuit Court of Appeals, Third Circuit.

Argued Oct. 19, 1944.

Decided Nov. 21, 1944.

Maurice Finkelstein, of New York City, and Stanley Folz, of Philadelphia, Pa. (Allen J. Levin and Sundheim, Folz, Kamsler & Goodis, all of Philadelphia, Pa., on the brief), for petitioner.

Milton V. Freeman, S.E.C., of Philadelphia, Pa. (Roger S. Foster, Sol., and Nathan J. Bonx, both of Philadelphia, Pa., on the brief), for respondent.

Before GOODRICH and McLAUGHLIN, Circuit Judges, and BARD, District Judge.

GOODRICH, Circuit Judge.

Petitioner, Bankers Securities Corporation (hereinafter called "Bankers"), seeks in this Court a review of the action of the Securities and Exchange Commission (hereinafter called "the Commission") de-

nying Bankers' petition brought under § 3 (b) (2) of the Investment Company Act of 1940, 15 U.S.C.A. § 80a—3 (b) (2). Section 3 of the statute, after describing the term "investment company" in paragraph (a), provides in paragraph (b) for the exclusion of certain persons from the classification of "investment company" within the meaning of the sub-chapter. The provision in point here is the exception number (2) which reads as follows:

"Any issuer which the Commission, upon application by such issuer, finds and by order declares to be primarily engaged in a business or businesses other than that of investing, reinvesting, owning, holding, or trading in securities either directly or (A) through majority-owned subsidiaries or (B) through controlled companies conducting similar types of businesses.  *  *"

On November 8, 1940, Bankers initiated proceedings seeking to procure from the Commission an order declaring it not to be an investment company, under the provision already quoted. On April 7, 1944, the Commission denied the request for the order under § 3 (b) (2) of the Act and the case is here on review under the provision of § 42 of the same statute.[1] This section incorporates the usual rule that "The findings of the Commission as to the facts, if supported by substantial evidence, shall be conclusive."

The Commission concluded that not only did the record before it fall short of sustaining Bankers' claim that it is primarily engaged in non-investment company business, but that it demonstrated affirmatively that Bankers was organized and has always been operated as an investment enterprise. Bankers has contended before the Commission and again before this Court, that it is primarily engaged in other than investment activities, namely the business of owning and operating mercantile enterprises, chiefly department stores, and owning and operating real estate. The scope of review by us is confined solely to whether the Commission's conclusion denying the exemption sought is supported by the evidence. While the appellant suggests a legal question in the definition of "primarily engaged", a phrase used but not defined in the statute, both sides are in agreement that the words are not a

[1] Petitioner's application for orders under §§ 3(a), 3(c) and its subparagraphs (6) (C) and (7) of the Act were dismissed by the Commission. However no review of this ruling has been sought.

technical term of art and should be given the meaning attached to them in common parlancé. Our examination, then, becomes one of the facts.

Much of the proof is documentary, supplied by the applicant itself. Indeed the question, in the last analysis, becomes that of the sufficiency of the facts to support the conclusion reached since there is little or no dispute on the evidentiary facts themselves.

■ One phase of the appellant's activity discussed in the opinion of the Commission and by both sides in argument here, consists of statements which Bankers has made about itself. These began with the statement of purpose in its charter (1928) which is described to be that of " * * * purchasing * * * owning * * * using, selling, * * * investing and dealing in, for its own account or for the account of others, * * * securities, obligations and investments, * * *" Argument for Bankers brushes this aside for the reason that the broad language usually contained in articles of incorporation throws no light upon the real character of the corporation. We are dealing here not with the general question of power but with stated purposes by the incorporators themselves and their own statement of what they intended to do is not irrelevant, though, of course, not in it itself conclusive. The statement of purpose in the charter checks with the one in a prospectus issued in 1928 in which it was stated "Bankers Securities Corporation is organized to buy and hold, underwrite, acquire, sell and generally deal in corporate stocks, bonds, mortgages and mortgage bonds and securities, * * *" Bankers made application for registering its securities under the Securities Exchange Act of 1934, 15 U.S.C.A. § 78a et seq., using the form "For Incorporated Investment Companies." It also, for the years 1934 through 1939, filed with the Securities and Exchange Commission its annual report on Form 15-K designed by the Commission "For Incorporated Investment Companies."

Bankers objects vigorously to attaching any significance to the use of such a form in making its returns. The Investment Company Act was not passed until 1940. How then, it argues, can a report upon a form in use at a time when the concept of an investment company had no legal significance be used now, after it has become significant, to show the nature of its business? If the Commission's position depended upon the use of the form alone this argument would have very considerable force. But in making its application for registration Bankers had stated that "The policy of the registrant is to engage primarily in trading in securities." In the years following, in making its report to the Commission, it indicated, under the appropriate headings, "No change."

■ The significance of these reports is not in the form upon which they were filed. It lies in the factual statements made by Bankers to the Commission describing the nature of its business. These statements continued to be made up until the year when the Investment Company Act was passed.

Counsel for the Commission call our attention also to the fact that up until 1939 Bankers took advantage of provisions of tax laws allowing dealers in securities to use special methods of valuation of securities, purchases and sales. We find, on examination of the reports, that this is true and that the Treasury Regulation with regard to securities so inventoried may include only those held for purposes of resale and not for investment. Treasury Regulations 103 § 19.22c (5). But we do not rely on this fact, for a classification limited by the Treasury Regulation may have been unheard of by Bankers. While it is responsible for obeying the law we can hardly expect it actually to know and be guided by all the Treasury Regulations pursuant to tax statutes. The significant thing about the statements which Bankers made concerning itself and its business down to the time of the Investment Company Act is not the forms which it used for application and reports, but the factual description it gave of itself from the time it got a charter to the time of the passage of the statute. That description brings it within the classification of a business organization which is subject to the regulations prescribed by the statute.

While Bankers admits that it talked like an investment company in the early part of its history and almost admits that it acted like one, it says that the situation is changed by reason of the developments in the City Stores matter, the outcome of which is to put it in the retail merchandising business and, therefore, entitles it to a declaration that it is outside the Investment Company Act. This is really the substance of Bankers' case, reinforced by

the point about its real estate holdings which will be discussed below.

In September, 1928 Bankers purchased the controlling stock in Lit Brothers, a well known Philadelphia department store. In response to an offer from City Stores Company, a department stores holding company, it sold the stock at a substantial profit. City Stores borrowed money from Bankers and others to finance the purchase. City Stores became involved in difficulties. Eventually there was a 77B, reorganization as a result of which Bankers became the majority owner of City Stores stock and the owner of several million dollars in notes of the company partly secured. Its holdings were added to by subsequent purchases. At the end of 1942 applicant held a total of 1,001,277 shares of common stock of City Stores out of 1,210,000 and collateral trust notes in the reduced amount of $3,-880,000. In addition, Bankers owns 85% of the common stock of the Richard Store in Miami, Florida, and a stock interest and control of Bonwit Teller & Company of Philadelphia.

The evidence shows and the argument has covered the interrelationship of these concerns with Bankers and shows not only capital investment but interlocking directorates and the fact that directors of Bankers gave a great deal of time and attention to the business of the stores, especially, of course, Lit Brothers. There was oral testimony from individual members of the Board of Directors of Bankers that they liked their City Stores investment, that they have been successful in it and that they are in the mercantile business to stay. The conclusion urged is that whatever Bankers may have done at the start, they are now primarily engaged in retail merchandising through subsidiaries and, therefore, entitled to a declaration of exemption from the requirements of the statute in question.

The Commission, however, finds in this City Stores investment and in the other mercantile company investments made by Bankers instances of a repetitive pattern in the manner of conducting its investment business. It calls attention to the undisputed instances in which the company has made large loans involving major portions of its capital to single borrowers: $10,000,-000 to Fox Theaters; $1,200,000 of debentures of Philadelphia Record Company; $2,000,000 debentures of the Albert M. Greenfield & Co. Then it points out cases where the applicant has actively used its control to rehabilitate going businesses by management reforms so as to enhance the selling values of the holdings. This it describes as " * * * a well-recognized form of investment company business, known as dealing in 'special situations.'" The Commission's description of "special situation" activity is criticized by the appellant, but the Court does not know of any way of describing it any more accurately.

The conclusion reached by the Commission that the efforts of Bankers, both in its corporate capacity and through its various individual directors, in connection with City Stores is part of the general policy of rehabilitation to enhance the selling value of its properties, is fortified by the record showing of other ventures of the Company. In addition to the department stores already discussed, Bankers, through subsidiaries, has an interest in radio stations. It has purchased shares in insurance companies and has a controlling interest in one, closed out a block of stock at a profit in another and still holds interest in a third. It has been a purchaser of blocks of shares in several banks, in some instances with a view to block sales which have been successfully made. It has made investments in amusement companies and participated in the management of some of them; in two instances still does. The same course of dealing was had with such a concern as the Loft Candy Company. The Commission properly looked at the course of Bankers from its inception to the time of hearing. It saw a company, avowedly an investment company at the start. It saw the dealing with City Stores, but it also saw the company engaged in many other transactions many of which fell into the "special situation" type. Its conclusion was that the City Stores' situation is another albeit a larger and more difficult one to work out than some of the others; that the real nature of appellant's business as an investment company is unchanged. We find this conclusion amply supported by the evidence.

Considerable stress was laid in the briefs and arguments before us on the amount of real estate holdings of Bankers, the latter claiming that it is in the real estate as well as the department store business. Each side has attacked the other's figures. However, counsel for the Commission cites tables taken from the Company's report to its stockholders and an income table

92

taken from reports filed by the petitioner with the Commission. For selected years they show the following:

### REAL ESTATE ASSETS

| December | Total Assets per Balance Sheet | Real Estate in fee | Mort- First gages |
|---|---|---|---|
| 1931 | $16,095,505 | None | $747,250 |
| 1933 | 13,326,315 | $166,209 | 824,155 |
| 1935 | 13,867,196[2] | 291,975 | 983,780 |
| 1937 | 15,377,627 | 585,839 | 944,876 |
| 1939 | 15,239,112 | 706,507 | 966,933 |

### REAL ESTATE INCOME

| Year | Real Estate Income | Total Gross Income |
|---|---|---|
| 1935 | $30,396 | $ 759,996 |
| 1937 | 26,514 | 1,120,219 |
| 1939 | 18,787 | 914,684 |

The Company cites figures to show that its real estate investments in 1940 were 26.19% of its assets; in 1939, 25.96%; in 1938, 23.20%; in 1936, 24.71%. These figures, the Commission says, are obtained by classifying as real estate unsecured debentures, minority stock holdings in a bond and mortgage company and a building company and security interests in hotel properties as well as corporate mortgages. Even if it be assumed that the real estate holdings can be reasonably classified, for the purpose of consideration here, as including a larger percentage of the Company's assets than appeared in reports to stockholders, still they do not show Bankers in the real estate business. The dealing with regard to at least some of them was of the same sort as that already discussed with regard to mercantile enterprises, namely the purchase of an interest or a loan of money with a view to investment and subsequent resale. The Commission is both justified in and required to take the sum total of the activities, including the real estate transactions, into consideration in determining the nature of the business of the Company. We find no error in its conclusion that the Company was organized, and has always been operated, as an investment enterprise.

Affirmed.

Norman M. Littell, Asst. Atty. Gen., Frank P. Keenan, Sp. Asst. to the Atty.

---

[2] This is the figure in petitioner's report to its stockholders. However, its report to the Commission includes $93.-94 more which is apparently contained in its "Accrued interest receivable" item.