NATCO CORPORATION, a Pennsylvania corporation, Plaintiff,

v.

GREAT LAKES INDUSTRIES, INC., an Illinois corporation, James T. Bolan, William Wikoff Smith and Charles F. Toewe, Defendants.

Civ. A. No. 62–892.

United States District Court
W. D. Pennsylvania.

Dec. 7, 1962.

Ralph H. Demmler, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for plaintiff.

John G. Buchanan, Jr., Buchanan, Ingersoll, Rodewald, Kyle & Buerger, Pittsburgh, Pa., for defendants.

ROSENBERG, District Judge.

This is an action instituted by Natco Corporation (Natco), a Pennsylvania corporation, against Great Lakes Industries, Inc., (Great Lakes), an Illinois corporation, and others for preventive injunctive relief in the current contest

for the procurement of proxies in a forthcoming special meeting for the election of controlling officers of Natco.

The plaintiff, Natco, maintains in its complaint that Great Lakes is an investment company within the meaning of the Investment Company Act of 1940, 15 U.S.C.A. §§ 80a–1 through 52 and particularly 3(a) (1) and (3); that because it is an investment company, primarily so engaged, it is required to register with the United States Securities and Exchange Commission, but it has not done so; and that as an unregistered investment company, it is engaged in illegal activities by which the plaintiff is being harmed.

This is disputed by the defendants on the theory that they are primarily engaged in manufacturing and that its activities in connection with Natco are secondary activities within the purview of the Investment Company Act.

At a preliminary hearing stipulations of counsel were introduced in evidence, and testimony and exhibits were presented. After arguments of counsel and the presentation of briefs, this Court makes the following:

### FINDINGS OF FACT

1. Plaintiff, Natco Corporation ("Natco"), is a Pennsylvania corporation having its principal office at 327 Fifth Avenue, Pittsburgh, Allegheny County, Pennsylvania, and engages in interstate commerce.

2. Defendant, Great Lakes Industries, Inc. ("Great Lakes"), is an Illinois corporation existing under the Business Corporation Act of Illinois and having a principal office at Sixth and D Streets, Monmouth, Warren County, Illinois, and engages in interstate commerce.

3. Defendant, James T. Bolan, is an individual residing in Burlington, Iowa, with a place of business c/o Great Lakes Industries, Inc., Sixth and D Streets, Monmouth, Warren County, Illinois.

4. Defendant, William Wikoff Smith, is an individual residing at 712 Old Gulph Road in Bryn Mawr, Montgomery County, Pennsylvania.

5. Defendant, Charles F. Toewe, is an individual residing in the Eastern District of Pennsylvania with a place of business c/o Main & Company, 1313 Packard Building, Philadelphia, Pennsylvania.

6. The directors of Great Lakes are the following: James T. Bolan, Jack R. Dempsey, Fred L. Rosenbloom, David B. Rosenbloom, William Wikoff Smith and Charles F. Toewe.

7. The directors of Great Lakes hold the following amounts of Great Lakes' Common Stock, which represent control thereof.

| | Shares | Percent |
|---|---|---|
| William Wikoff Smith | 293,750 | 32.7% |
| Charles F. Toewe | 111,875 | 12.4% |
| Fred L. Rosenbloom | 81,880 | 9.0% |
| James T. Bolan | 61,500 | 6.8% |
| David B. Rosenbloom | 50,195 | 5.6% |
| Jack R. Dempsey | 26,000 | 2.9% |
| Total of above | 625,200 | 69.4% |

8. Great Lakes has more than 100 stockolders.

9. There appears in the Articles of Merger of Great Lakes the following statement:

"(a) The purpose or purposes for which the corporation is organized are as follows

\* \* \* \* \* \*

"(4) To acquire by purchase, subscription, underwriting, or otherwise, or become interested in any stock or stocks, warrants or options, security or securities (not including the discounting of bills and notes and not including the buying and selling of bills of exchange), property or rights and to participate in syndicates and underwritings; to cause to be formed, reorganized, merged, consolidated, or liquidated and to promote, take charge of, or aid, in any way permitted by law, the formation, reorganization, merger or liquidation of any corporation, association or partnership."

10. Great Lakes engaged in investing in securities of Natco Corporation and

continues to own securities of Natco Corporation.

11. Great Lakes owns of record or beneficially 179,423 shares of the Common Stock of Natco constituting approximately 25.1% of Natco's outstanding shares.

12. At the end of the last quarter of Great Lakes' fiscal year (September 30, 1962) the market price of Natco stock was $12 a share, and on November 14, 1962 was $9.25 a share. On November 26, 1962, the price of Natco stock was $9 a share.

13. The purchases by Great Lakes of Common Stock of Natco were effected with a view to gaining control of Natco.

14. Great Lakes has financed purchases of Common Stock of Natco by borrowing money from The Philadelphia National Bank. The present unpaid principal indebtedness for money so borrowed is $2,000,000 maturing on October 5, 1963 and bearing interest at the rate of 5¼% per annum. It is guaranteed to the extent of $1,750,000 by defendants Bolan, Smith and Toewe and by David B. Rosenbloom and Fred L. Rosenbloom, both residents of the Eastern District of Pennsylvania.

15. While the Natco stock is not pledged, the certificates remain in the possession of the Philadelphia National Bank. The Guarantors could have purchased the stock as individuals, but they used Great Lakes as a corporate vehicle because of the "corporate opportunity" problem. The Philadelphia National Bank knew that the loan was to purchase Natco Stock.

16. Great Lakes has used the mails and other means or instrumentalities of interstate commerce to purchase shares of Common Stock of Natco. The Philadelphia National Bank forwarded certain of these shares to have the same transferred into Great Lakes' name on the books of Natco at the office of Natco's transfer agent, Commonwealth Bank and Trust Company, at its office in Pittsburgh, Allegheny County, Pennsylvania.

17. Great Lakes has purchased as of August 20, 1962, by the use of the mails and other means or instrumentalities of interstate commerce, shares of common stock of Natco as follows:

| Date purchased | Number of shares |
| --- | --- |
| November 17, 1961 | 3,900 |
| December 15, 1961 | 1,400 |
| December 19, 1961 | 1,500 |
| February 22, 1962 | 500 |
| March 1, 1962 | 600 |
| March 5, 1962 | 1,200 |
| March 6, 1962 | 500 |
| March 14, 1962 | 700 |
| March 16, 1962 | 1,100 |
| March 19, 1962 | 1,200 |
| March 26, 1962 | 5,000 |
| April 2, 1962 | 44,354 |
| April 26, 1962 | 5,874 |
| May 1, 1962 | 5,000 |
| May 21, 1962 | 5,000 |
| May 25, 1962 | 5,000 |
| May 29, 1962 | 10,000 |
| May 31, 1962 | 1,300 |
| June 1, 1962 | 1,300 |
| June 4, 1962 | 5,000 |
| June 13, 1962 | 5,000 |
| June 15, 1962 | 5,000 |
| June 20, 1962 | 1,000 |
| June 22, 1962 | 5,000 |
| June 25, 1962 | 5,000 |
| July 11, 1962 | 3,100 |
| July 12, 1962 | 700 |
| July 13, 1962 | 200 |
| July 18, 1962 | 1,300 |
| July 25, 1962 | 800 |
| July 26, 1962 | 200 |
| July 27, 1962 | 500 |
| July 31, 1962 | 200 |
| August 1, 1962 | 1,000 |
| August 3, 1962 | 300 |
| August 6, 1962 | 200 |
| August 7, 1962 | 2,300 |
| August 8, 1962 | 2,500 |
| August 9, 1962 | 100 |

134,828 as of August 20, 1962

18. Great Lakes is not registered with the United States Securities and Exchange Commission as an investment company.

19. On March 28, 1962, defendant James T. Bolan came to Pittsburgh, Pennsylvania, for the purpose of meeting with Roy A. Shipley. At this meeting, Bolan stated that he was the President of Great Lakes, which was acquiring a substantial amount of stock of Natco. On the basis of this stock investment, he requested that he be elected a member of the Board of Directors if a vacancy developed.

20. On April 5, 1962, defendants James T. Bolan and Charles F. Toewe attended an annual meeting in Pittsburgh, Pennsylvania of Plaintiff Natco and at such meeting by the use, as proxies, of the cumulative voting powers of shares owned by Great Lakes beneficially or of record, and of other shares for which they held proxies, elected defendant Bolan as a member of the Board of Directors of Natco.

21. Thereafter, defendant James T. Bolan attended meetings of the Board of Directors of Natco, all of which took place in Pittsburgh, Pennsylvania, on the following dates: April 17, May 15, June 19, July 17, August 16, September 20, October 18 and November 15, 1962.

22. On June 19, 1962, following previous oral requests made by him in Pittsburgh, defendant James T. Bolan was elected a member of the Executive Committee of plaintiff Natco. Thereafter, he attended meetings of the Executive Committee, all of which took place in Pittsburgh, Pennsylvania, at the following times: July 3, August 7, August 30, September 5, October 2 and November 6, 1962.

23. On August 9, 1962, defendant James T. Bolan traveled to Pittsburgh, Pennsylvania, and met with Roy A. Shipley and at said meeting requested that five new members of the Board of Directors be elected. Thereafter, defendant James T. Bolan presented the same request to a meeting of the Board of Directors in Pittsburgh, Pennsylvania, on August 16, 1962.

24. In October, 1962, defendants, James T. Bolan, William Wikoff Smith and Charles F. Toewe, became members of a Stockholders' Committee to solicit proxies to elect new members of the Board of Directors. According to a Proxy Statement filed with the Securities and Exchange Commission and sent to Natco's shareholders:

"Great Lakes Industries, Inc., in which Mr. Toewe has a 12.4% interest, and of which Mr. Bolan is President, started to purchase Natco shares in November 1961, with its own surplus cash, with a view toward gaining control in the belief that Natco has a fine potential which can be realized under new management."

25. A special meeting of shareholders of Natco has been called for December 12, 1962. This special meeting was called pursuant to a request of a resolution or resolutions of the Board of Directors of Great Lakes, authorizing its President, James T. Bolan, who was at the same time indicated to be the "Chairman of the Better Management Committee for Natco Corp." For the purpose of removing the present Board of Directors and to take other steps in connection with the proxy contest.

26. The names, addresses, the officers and number of shares held by the Better Management Committee for Natco Corporation are as follows:

| | Shares |
| --- | --- |
| James T. Bolan | 0 |
| M. C. Conick | 8,943 |
| Jack R. Dempsey | 0 |
| Fred L. Rosenbloom | 0 |
| William Wikoff Smith | 0 |
| Charles F. Toewe | 0 |
| Albert L. Jacobs | 4,111 |
| S. Leo Ruslander | 6,246 |

Those members of the Committee who hold stock in Great Lakes are as follows, together with the number of shares which they hold:

| | Shares |
| --- | --- |
| J. Dempsey | 26,000 |
| D. Rosenbloom | 50,195 |
| C. Toewe | 111,875 |
| J. T. Bolan | 61,500 |

Additionally, there are the indirect holdings as follows:

J. Dempsey, through Dempsey & Co. — 3,500
W. W. Smith, as President and stockholder of Kawee Oil Company — 293,750

Members of the Committee who are directors of the Great Lakes Industries:

J. Dempsey
D. Rosenbloom
F. Rosenbloom
W. W. Smith
J. T. Bolan, also its President.

27. Members of the Committee who are presently directors or officers of Great Lakes Industries, Inc., and who it is proposed will become directors and have majority control of Natco are the following:

J. T. Bolan, President and Executive Manager
J. Dempsey
F. Rosenbloom
D. Rosenbloom
W. W. Smith
C. Toewe

Of these F. Rosenbloom will be one of the members of a law firm who will represent the newly controlled Natco. F. Rosenbloom is one of the members of the same law firm of lawyers who presently represent the Committee. None of these have any direct holdings in Natco.

28. Defendant Bolan, and the Stockholders' Committee have announced that if the present Board of Directors of Natco is removed and a new Board of Directors, to be nominated by them, is elected, the new Board will appoint defendant Bolan as chief executive officer.

29. Mr. Bolan will have an office in Pittsburgh, Pennsylvania, if elected chief executive officer of Natco.

30. The Stockholders' Committee proposes to use its security holdings in Natco and the proxies solicited by it to elect the persons shown in Exhibit 2 as members of the Board of Directors of Natco Corporation and to cause them to be remunerated in such positions as is shown in Exhibit 2. The persons so elected intend to elect James T. Bolan as the chief executive officer of Natco.

31. On September 19, 1962, defendant James T. Bolan delivered in Pittsburgh, Pennsylvania, to Miss Mabel Monheim, Secretary of Natco, a written request for a Special Meeting of Shareholders for the purpose of removing the present Board of Directors. On September 26, 1962, Miss Monheim received letters from James T. Bolan, as President of Great Lakes and Chairman of the Better Management Committee for Natco Corporation, requesting a Special Meeting of Shareholders. On October 18, 1962, Miss Monheim received a letter from the firm of Schnader, Harrison, Segal & Lewis, which was accompanied by a certified copy of the resolutions of the Board of Directors of Great Lakes, authorizing the President of Great Lakes Industries, Inc. to request a Special Meeting of Shareholders, and to take other steps in connection with the proxy contest.

32. A special meeting of shareholders of Natco has been called for December 12, 1962 for the purpose of considering a proposal of Great Lakes and its co-participants to remove the Board of Directors of Natco and if the Board is removed to elect a new Board of Directors.

33. Defendant James T. Bolan has personally solicited in the Western District of Pennsylvania stockholders of Natco residing in the Western District of Pennsylvania for proxies in favor of the proposal to remove the Board of Directors and to elect the slate proposed by the Stockholders' Committee.

34. Defendant Bolan and the Stockholders' Committee have announced that if the present Board of Directors of Natco is removed and a new Board of Directors is elected, the expense of soliciting on behalf of the Committee, which is estimated will be $25,000 will be reimbursed by Natco.

35. Great Lakes has paid to date approximately $41,200 interest on its loan

from The Philadelphia National Bank. The next interest payment of approximately $25,000 is due in January of 1963. The annual interest on said loan is $104,000.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action.

2. Plaintiff, Natco Corporation, has standing to invoke the aid of this Court to prevent the above-described violations of the Investment Company Act of 1940.

3. An application should have been made by Great Lakes to the Securities and Exchange Commission pursuant to the provisions of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–3, for determination by that Commission as to whether Great Lakes was an investment company required to register under that Act, or such as would have been an exception or entitled to exemption thereunder.

4. The Securities and Exchange Commission is the specialized body constituted by Congress with expertise investigative powers for making such determination as should have heretofore been made.

5. The Securities and Exchange Commission is a competent body which can aid and assist this Court in making such a determination for the settling of the issues raised by the parties in this action.

6. The defendant, Great Lakes, should be required, as soon as may be, to make such an application to the Securities and Exchange Commission so that its report may be had as quickly as may be by the parties and this Court.

7. All matters as they may affect the rights and liabilities of the parties to this action, should remain in *status quo* until receipt of the Commission's report and further order of this Court.

8. The injury to the plaintiff, Natco Corporation, as a result of the successful achievement by Great Lakes, if in violation of the Investment Company Act of 1940, of its aim to gain control of Natco outweighs any possible harm to Great Lakes which would result from the granting of a preliminary injunction to maintain the *status quo* pending final determination of this action and of any proceedings under the Investment Company Act of 1940 before the United States Securities and Exchange Commission.

9. A preliminary injunction should issue to effectuate these conclusions of law.

## OPINION

The primary issues in this case are whether or not the defendant corporation, Great Lakes, is an investment company within the meaning of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–1 et sequi, requiring registration with the Securities and Exchange Commission, or is the said defendant company excepted or entitled to one of the exemptions provided in that Act?

In the event Great Lakes is an investment company not subject to any of the exemptions under the Act, then registration should have been made by Great Lakes with the Securities and Exchange Commission in accordance with the procedure provided therefor.

At the preliminary hearing of this case and in their briefs, counsel for both parties asserted their belief that Great Lakes should have filed an application with the Commission for determination whether its activities categorize it as an investment company which requires registration. However, counsel for the parties did not so stipulate.

We have as a first consideration, as more fully set forth in Findings of Facts No. 9, that one of the purposes for which Great Lakes was incorporated was the acquiring by purchase, subscription, underwriting, or otherwise, or the becoming interested in any stocks, warrants, security or securities and the participation in syndicates and underwritings of groups, together with other additional powers or purposes.

A purpose of, or power in the corporation does not necessarily decide the issues here. The plaintiff contends that is the primary activity of Great Lakes which

makes it an investment company liable to registration under the provisions of the Act. How will this be gauged?

In support of their respective contentions, the parties dispute the basis of determining the worth particularly of certain assets of Great Lakes and whether the worth consideration infringes the certain percentage provisions of the Act. Now that this question has been raised it is a matter of equity that a basic determination be made, not only for the benefit of the parties to this action, but for the stockholders as well. This basic determination, however needs more, and perhaps a more prolonged inquiry than can be afforded in this preliminary hearing.

In the case of Hewitt-Robins, Inc., v. Eastern Freight-Ways, Inc., November 19, 1962, 371 U.S. 84, 85, 83 S.Ct. 157, on page 158, 9 L.Ed.2d 142, the following is set out as part of its note:

"* * * 'the courts, while retaining the final authority to expound the statute, should avail themselves of the aid implicit in the agency's superiority in gathering the relevant facts and in marshalling them into a meaningful pattern,' Federal Maritime Board v. Isbrandtsen Co., 356 U.S. 481, 498 [78 S.Ct. 851, 2 L.Ed.2d 926] (1958), rather than relying upon the shipper to file an adversary proceeding with the Commission."

Mr. Justice Brennan refers to two other cases in United States Navigation Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408, and Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576. From the second case he cites the following:

" 'The Court (in Cunard) thus applied a principle, now firmly established, that in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over. This is so even though the facts after they have been appraised by specialized competence serve as a premise for legal consequences to be judicially defined. Uniformity and consistency in the regulation of business entrusted to a particular agency are secured, and the limited functions of review by the judiciary are more rationally exercised, by preliminary resort for ascertaining and interpreting the circumstances underlying legal issues to agencies that are better equipped than courts by specialization, by insight gained through experience, and by more flexible procedure' ".

Mr. Justice Brennan adds this at page 498 of 356 U.S., at page 861 of 78 S.Ct. of the Isbrandtsen case:

"Rather, those cases recognized that in certain kinds of litigation practical considerations dictate a division of functions between court and agency under which the latter makes a preliminary, comprehensive investigation of all the facts, analyzes them, and applies to them the statutory scheme as it is construed. Compare Denver Union Stock Yard Co. v. Producers Livestock Marketing Ass'n, ante, [356 U.S.] p. 282 [78 S.Ct. 738, 2 L.Ed.2d 771]. It is recognized that the courts, while retaining the final authority to expound the statute, should avail themselves of the aid implicit in the agency's superiority in gathering the relevant facts and in marshaling them into a meaningful pattern. Cases are not decided, nor the law appropriately understood, apart from an informed and particularized insight into the factual circumstances of the controversy under litigation."

Because the United States Congress has established the Securities and Exchange Commission and vested it with specialized and expensive powers so as to expertize it in this specialized field, it undoubtedly would be the proper instrument to effectuate the legislative intentions of Congress. Its special facili-

ties and expertized powers could be relied upon by the Court, particularly where a speedy determination is of paramount importance, to be most apt and particularly fitted to assist and advise the Court.

The defendant company will, therefore, be required to make application for registration, pursuant to the provisions of the Investment Company Act, and the Commission will be requested to hasten the inquiry and arrive at a report which may aid this Court in making a finalized determination.

Nominally, the parties are a corporation as plaintiff and a corporation as a primary defendant. Actually, it is not a dispute between the corporations, but rather between those who are presently in control of the plaintiff corporation, and those who seek to gain control of the plaintiff corporation. This latter group, it would appear and not necessarily wrongfully, are using Great Lakes, more or less, as a vehicle in their efforts to accomplish the gaining of control of the plaintiff corporation.

Five directors of Great Lakes are seeking to elect themselves with others as directors of Natco for the purpose of gaining control. While these five men own approximately 69% of Great Lakes stock, none of them own any stock of Natco, yet they exercise interest in Natco stock. The five directors of Great Lakes, Bolan who is its president, Smith, Toewe, F. Rosenbloom, and D. Rosenbloom, are also the guarantors to the extent of $1,750,000.00 of a $2,000,000.00 loan made by Great Lakes on the Philadelphia National Bank, for the procurement of proceeds for the purchasing of Natco stock in the name of Great Lakes. A declaration has been made to the stockholders by means of the Stockholders Committee for Better Management of Natco Corporation that Bolan will be its President at a salary of $25,000 a year as chief executive officer, in addition to the annual salary of $25,000 which he receives from Great Lakes, and that the other directors will receive directors' fees from Natco.

The defendants contend that they are pursuing their project for acquiring proxies with a view to gaining permanent control of Natco for purposes of realizing the potential of Natco. This statement of intention in itself is not a declaration of anything unlawful, but when viewed together with all the other circumstances of the case, inferences and questions are raised which cannot be passed over lightly. "Permanent Control" when once achieved will not necessitate the holding of such a large block of Natco stock permanently, and if the individuals who intend to become the executive officer and directors in "control" become entrenched, it is reasonable to conclude, from the facts in evidence, that they will permit, perhaps even direct, the sale by Great Lakes of so much of Natco stock as will then become superfluous holdings. There is nothing in the record that will indicate that "realizing the potential of Natco" means fullest benefits to minority or general stockholders as against benefits to those who guaranteed the loan by which Great Lakes was enabled to purchase Natco stock. All of this, too, may be lawful and proper, but if Great Lakes is an investment company within the meaning of the Act requiring registration, then lawfulness is seriously brought into question.

Through the action of Bolan in November 1960, Western Stoneware Company of Monmouth, Illinois, was merged with Great Lakes. This transaction also included three members of the present Committee, Smith, Toewe and one of the Rosenblooms. There is no evidence of stock transactions before and after that merger before the Court, but it would be available to the Securities and Exchange Commission for such meaning as would aid in determining any parallelism, if any exists, with the instant case as it relates to the purpose of Great Lakes and its primary business.

The evidence is that Dempsey, a director of Great Lakes, owns in his own name 26,000 shares of Great Lakes and indirectly through Dempsey & Co., a

brokerage firm in Chicago, Illinois, 3500 shares of Great Lakes. It is expected that he, as a member of the Committee, will also become a director of Natco.

If Great Lakes is an investment company, which under the provisions of the Act should have been registered, this Court will be required to consider whether or not the stated purpose of these men as part of the stockholders committee, is or is not a function within the fiduciary duties of such directors and officers in the company's management, free from any self-dealing interests. Brown v. Bullock, D.C.N.Y., 194 F.Supp. 207. See also Investment Company Act, Section 80a–1(b) (2).

The purposes of incorporation, while not conclusive in themselves, may be relevant as evidence in the determination of the primary issues here. Bankers Securities Corp. v. S. E. C., C.C.A.3rd (1944), 146 F.2d 88.

If Great Lakes is an investment company within the meaning of the Act, it should have registered, and if it were permitted to proceed to the accomplishment of gaining control of the plaintiff corporation and to expend funds as indicated, irreparable injury might well result. For, while defendants indicate that they can better the financial situation of Natco (realize the potential of Natco), if they are placed in charge, this may very well be mere speculation and result in financial harm to Natco stockholders generally. It is something which a Court of equity must anticipate in an effort to prevent harmful results in the future.

Great Lakes is now engaged in soliciting and procuring proxies and declares its intention to seek reimbursement of all expenses from Natco. If no relief is granted and Great Lakes is an investment company within the meaning of the Act and therefore required to be registered thereunder, and it is permitted to continue such operation and incur expenses and gain control of Natco corporation and procure reimbursement from the new control, it may well be anticipated that injury will result.

There would hardly be any likelihood that this newly elected group of officers would refuse to make reimbursement of the expenses which they, themselves, had incurred.

Although the annual meeting of Natco occurs in April, at the insistence of Bolan, he was elected a member of the Natco executive committee on June 19, 1962, and thereafter because of the demands made, through Bolan, the Committee and letters from the Committee's attorneys demanding the replacement of the present Natco officers by those desiring to take over control, the Natco management called a special meeting of shareholders of Natco for December 12, 1962, for the purpose of considering the proposal of Great Lakes and its co-participants to remove the board of directors of Natco and have the election of the suggested new board of directors.

The chronology characterizes the December 12 meeting as a forced meeting. Standing alone, there is nothing unlawful in this. However, it must be examined together with all the other circumstances in the case to determine whether present relief should be granted to prevent likely, prospective injury to Natco or its stockholders or any part of them.

Here, in line with its corporate purpose, Great Lakes invested (as this term must require interpretation) in a large proportion of Natco stock with a view to gaining control of that corporation. The holdings were acquired with less patience that ordinary investing portends. The speed with which efforts towards gaining control was consummated was with equally limited patience. Should the specially set meeting of December 12 be permitted under all of these circumstances? Should a preliminary injunction issue here?

I could not hope to better express my thinking than was so aptly stated by Judge Frank in Hamilton Watch Co. v. Benrus Watch Co., Inc., in the United States Court of Appeals for the Second Circuit, 206 F.2d 738, 739.

At page 740:

"To justify a temporary injunction it is not necessary that the plaintiff's right to a final decision, after a trial, be absolutely certain, wholly without doubt; if the other elements are present (i. e., the balance of hardships tips decidedly toward plaintiff), it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation."

And at page 743:

"The judge must consider whether irreparable harm is likely to result to plaintiff if *pendente lite* (i. e., 'immediately') the injunction is denied, and against this harm he must balance the harm to defendant likely to result if the relief is granted. The 'hardship plaintiff will suffer * * * may make interlocutory relief imperative where the same showing at a final hearing would not outweigh the hardship the defendant would suffer from a permanent injunction. Thus in view of the character and extent of the emergency presented, of the provisional and temporary character of the relief sought, of the probable period of its duration, and of the court's tentative opinion on the substantive issues involved, the factor of relative hardship is measured, on an application for interlocutory injunction, with a different yardstick from that used at final hearing.' Here no substantial harm from the injunction to defendant is perceptible; but the hardship to plaintiff, were there no injunction, would be very considerable."

I agree with the parties in this case that there should have been an application for registration made with the Securities and Exchange Commission. I cannot foresee an absolute end to the conflicts which now prevail between the parties, by either the granting or refusing the petition of the plaintiff in accord with its tenor.

Congress had a purpose and plainly expressed its policy in the Investment Company Act. In providing an order here, it should incorporate all efforts possible for compliance with that policy with the United States Supreme Court's decision while attempting to prevent anticipated harms to those effected by this action. Accordingly, a preliminary injunction will be granted for the requiring of Great Lakes registration and the maintenance of the status quo of the parties in the interim.

### ORDER

AND NOW, TO-WIT, this 7th day of December, 1962, after consideration of the evidence, which includes oral testimony, stipulations of counsel and exhibits of the parties at a preliminary hearing, arguments of counsel and briefs as filed,

IT IS HEREBY ORDERED AND DIRECTED as follows:

1. That the defendant, Great Lakes Industries, Inc., make application forthwith to the Securities and Exchange Commission pursuant to the provisions of the Investment Company Act of 1940, 15 U.S.C.A. § 80a–3, for a determination by that Commission as to whether or not Great Lakes Industries, Inc., is an investment company as may be required to be registered under that Act, or such as may be included in the exception or entitled to exemption thereunder.

2. That all parties are enjoined from any activities in soliciting and procuring proxies for the special meeting called for December 12, 1962, or any adjournment thereof, and from doing any and all matters in relation to the solicitation and procurement of such proxies pending further order of this Court.

3. That the plaintiff, Natco Corporation, postpone until further order of this Court the meeting heretofore scheduled for December 12, 1962 or any adjournment thereof.

4. That the plaintiff, Natco Corporation, file an injunction bond with this Court in the amount of $5,000.00.

5. Finally, it is ordered that the Clerk of this Court dispatch a certified copy of this proceeding, this Court's Findings of Fact and Conclusions of Law and this Order to the Securities and Exchange Commission, Washington, D. C.

The Securities and Exchange Commission is hereby requested to make a speedy determination and report hereon as may be so that this Court may act to finalize the proceeding.