**McChesney GOODALL, Plaintiff,**

v.

**COLUMBIA VENTURES, INC., et al., Defendants.**

**No. 73 Civ. 3688–LFM.**

United States District Court, S. D. New York.

April 29, 1974.

Shearman & Sterling, New York City, for defendants; Danforth Newcomb, New York City, of counsel.

White & Case, New York City, for plaintiff; Peter M. Collins and Ted Neuenschwander, New York City, of counsel.

## OPINION

**MacMAHON, District Judge.**

Defendants move, pursuant to Rule 12(b)(6) and (c), Fed.R.Civ.P., for an order dismissing the first, second, fourth and fifth claims for relief alleged in plaintiff's complaint, or, in the alternative, for an order granting defendants judgment on the pleadings. Plaintiff cross-moves to dismiss the two counterclaims pleaded in defendants' amended answer for failure to state a claim upon which relief can be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P.

Plaintiff is the owner of 90,000 shares of common stock of Chemical Separations Corporation (Chem Seps), a Tennessee corporation, which produces machinery and processes for water purification. Defendant Columbia Ventures, Inc. (Columbia), a New York corporation, formerly known as Small Business Investment Company of New York, Inc., is a small business investment company, licensed by the Small Business Administration and registered with the Securities and Exchange Commission under the Investment Company Act of 1940, 15 U.S.C. § 80a–8. Columbia is the majority stockholder of Chem Seps. The individual defendants are (or were) directors of Chem Seps and are officers of Columbia.

The complaint alleges that plaintiff has been injured by two transactions allegedly engineered by Columbia, through its control of a majority of the Chem Seps' board of directors, including the individual defendants. The first transaction involved the sale to Columbia of all of Chem Seps' patents and patent rights, which comprise virtually all of its assets, in exchange for 8,000 shares of Chem Seps' $100 par value preferred stock owned by Columbia. The second transaction was the issuance of 1.1 million shares—52%—of Chem Seps' then outstanding common stock, at 10¢ per share,[1] to Foster Wheeler Corporation (Foster Wheeler), allegedly controlled by the same parent company as Columbia.

Plaintiff claims damages of $500,000 and asserts that defendants have violated the Investment Company Act of 1940;[2] § 10(b) of the Securities Exchange Act of 1934[3] and SEC Rule 10b–5 promulgated thereunder;[4] § 48–816 of the Tennessee Corporation Code; §§ 107.1004(a) and 107.901(a) of the Small Business Administration Regulations;[5] and the common law. Jurisdiction is based on § 27 of the Exchange Act,[6] § 45 of the Investment Company Act,[7] and the principles of pendent jurisdiction.

We turn, first, to defendants' motion.

Plaintiff's first claim asserts a violation of § 17(a) of the Investment Company Act, which prohibits certain transactions by persons affiliated with registered investment companies.[8] Defend-

---

1. The complaint alleges that prior to the sale of stock to Foster Wheeler, Chem Seps stock was selling for $1.50 to $1.75 per share.

2. 15 U.S.C. § 80a–17(a).

3. 15 U.S.C. § 78j(b).

4. 17 C.F.R. § 240.10b–5.

5. 13 C.F.R. §§ 107.1004(a) and 107.901(a).

6. 15 U.S.C. § 78aa.

7. 15 U.S.C. § 80a–44.

8. Title 15, United States Code, § 80a–17(a), · provides:

"(a) It shall be unlawful for any affiliated person or promoter of or principal underwriter for a registered investment company (other than a company of the character described in section 80a–12(d)(3)(A) and (B) of this title), or any affiliated person of such a person, promoter, or principal underwriter, acting as principal—

(1) knowingly to sell any security or other property to such registered company or to any company controlled by such registered company, unless such sale involves solely (A) securities of which the buyer is the issuer, (B) securities of which the seller is the issuer and which are part of a general offering to the holders of a class of its securities, or (C) securities deposited with the trustee of a unit investment trust or periodic payment plan by the depositor thereof;

(2) knowingly to purchase from such registered company, or from any company controlled by such registered company, any

**1328**

ants contend that since plaintiff is not the owner of an interest in any investment company, including Columbia, he lacks standing under the Investment Company Act.

■ There can be no doubt that the Investment Company Act supports a private right of action for damages.[9] We must decide, however, whether that private right of action may be asserted by a plaintiff who has no ownership interest in an investment company. Plaintiff claims that he states a valid claim for relief under the Act because he has been injured as a result of defendants' violation of the Act.

■ The Investment Company Act of 1940 was enacted by congress to correct and prevent a variety of abuses in the management of investment companies.[10] The legislation was intended by congress to benefit those persons who had ownership interests in investment companies.[11] The statute was not, however, designed to regulate the management of companies in which investment companies invested their funds or to protect the security holders of those companies.[12]

■ It is well established that where a private right of action is implied from a statute, a violation of the statute is actionable only by those within the class of persons the statute was designed to protect.[13] Thus, the private right of action under the Investment Company Act should extend only to persons holding ownership interests in investment companies. Courts have generally denied standing to sue under the Investment Company Act to persons who lack such an ownership interest.[14]

In Independent Investor Protective League v. Securities and Exchange Comm'n, 495 F.2d 311 (2d Cir. 1974), and Herpich v. Wallace, 430 F.2d 792 (5th Cir. 1970), where plaintiffs claimed, as does plaintiff here, that an investment company was abusing its power as a controlling shareholder in plaintiffs' corporation to their injury, standing to sue was denied because the damage allegedly suffered by plaintiffs was outside the scope of interests protected by the Investment Company Act.[15] The court, in *Herpich*, said "plaintiffs must look elsewhere than to the Investment Company Act for a remedy." [16]

security or other property (except securities of which the seller is the issuer) ; or

(3) to borrow money or other property from such registered company or from any company controlled by such registered company (unless the borrower is controlled by the lender) except as permitted in section 80a–21(b) of this title."

9. Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961) (en banc).

10. See 15 U.S.C. § 80a–1(b) ; General Time Corp. v. American Investors Fund, Inc., 283 F.Supp. 400 (S.D.N.Y.1968).

11. Independent Investor Protective League v. Securities and Exchange Comm'n, 495 F.2d 311 (2d Cir. 1974) ; Verrey v. Ellsworth, 303 F.Supp. 497 (S.D.N.Y.1969) ; General Time Corp. v. American Investors Fund, Inc., *supra.*

12. Herpich v. Wallace, 430 F.2d 792, 816 (5th Cir. 1970).

13. Restatement of Torts 2d (1965), § 286, Comment f; Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967) ; Taussig v. Wellington Fund, 313 F.2d 472 (3d Cir.), cert. denied, 374 U.S. 806, 83 S. Ct. 1693, 10 L.Ed.2d (1963).

14. Independent Investor Protective League v. Securities and Exchange Comm'n, *supra;* Securities and Exchange Comm'n v. General Time Corp., 407 F.2d 65, 71 (2d Cir. 1968) ; General Time Corp. v. American Investors Fund, Inc., *supra;* Herpich v. Wallace, *supra;* Greater Iowa Corp. v. McLendon, *supra.*

In Natco Corp. v. Great Lakes Indus., Inc., 214 F.Supp. 185 (W.D.Pa.1962), the court assumed that a plaintiff without an ownership interest in an investment company had standing to sue under the Investment Company Act. However, on appeal, pursuant to a joint petition of the parties, the case was remanded to the trial court for dissolution of the injunction and dismissal of the action. Natco Corp. v. Great Lakes Indus., Inc. [1961–64 Transfer Binder], CCH Sec.L.Rep. ¶ 91,236 (3d Cir. 1963).

15. Independent Investor Protective League v. Securities and Exchange Comm'n, *supra*, at 312; Herpich v. Wallace, *supra*, 430 F.2d at 817.

16. Herpich v. Wallace, *supra*, 430 F.2d at 816.

■ Similarly, plaintiff here has failed to demonstrate either that he is a member of the class congress intended to protect or that he has suffered a harm actionable under the statute, and, therefore, he lacks standing to assert a private right of action under the Investment Company Act and the first claim asserted in the complaint must be dismissed.

Turning to the second claim, defendants contend that plaintiff lacks standing to sue under § 10(b) of the Securities Act. They argue that since plaintiff is neither a purchaser nor a seller of securities, his standing to sue is barred by the rule of Birnbaum v. Newport Steel Corp., 193 F.2d 461, 464 (2d Cir.), cert. denied, 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Plaintiff contends that he states a valid § 10(b) claim because defendants violated § 10(b) by issuing false and misleading proxy materials which facilitated the fraudulent sales of Chem Seps' patents to Columbia and stock to Foster Wheeler and because he was damaged as a result of their actions. *Birnbaum*, plaintiff argues, requires only that a plaintiff be damaged by a fraud in connection with a purchase or sale of securities, not that plaintiff be a purchaser or seller himself.

■ Although *Birnbaum* has been widely criticized [17] and its scope narrowed,[18] it is still law in this circuit.[19] It has been consistently held that *Birnbaum* limits the protection of § 10(b) and Rule 10b–5 "to those who actually purchase or sell securities to their loss in reliance upon the withholding or misrepresentation of material information or other manipulative or deceptive devices." [20] Certain exceptions to *Birnbaum*, however, have been developed. Thus, if the plaintiff is a forced seller, or seeks only injunctive relief, or brings his suit derivatively, *Birnbaum* is inapplicable.[21] Where a plaintiff seeks to recover damages for a violation of § 10(b), however, *Birnbaum* still requires that he be either a purchaser or a seller of the securities involved.[22]

Plaintiff does not claim that his suit comes within any of the recognized exceptions to *Birnbaum*. He contends, nonetheless, that *Birnbaum* requires only a causal connection between a purchase or sale of securities and a plaintiff's loss, and he cites Heyman v. Heyman, 356 F.Supp. 958 (S.D.N.Y.1973), to support this view.

In *Heyman*, plaintiff was one of the beneficiaries of a testamentary trust, which, pursuant to a stockholders' agreement, sold securities acquired from the decedent for less than their true value. The court held that although plaintiff was not technically the seller of the securities, the sale was made for her bene-

---

17. See, *e. g.*, Lowenfels, "The Demise of the Birnbaum Doctrine: A New Era for Rule 10b–5," 54 Va.L.Rev. 268 (1968); Tully v. Mott Supermarkets, Inc., 337 F.Supp. 834 (D.N.J.1972); Ryan, "Bankers Life, Birnbaum Revisited," 4 Loyola (Chicago) L.Rev. 47 (1973).

18. See, Vine v. Beneficial Finance Corp., 374 F.2d 627 (2d Cir.), cert. denied, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967); Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967); Crane v. Westinghouse Air Brake Co., 419 F.2d 787 (2d Cir. 1969), cert. denied, 400 U.S. 822, 91 S.Ct. 41, 27 L.Ed.2d 50 (1970).

19. Heyman v. Heyman, 356 F.Supp. 958 (S.D.N.Y.1973).

The Seventh Circuit, however, has recently abandoned the *Birnbaum* rule. Eason v. General Motors Acceptance Corp., 490 F.2d 654 (7th Cir. 1973). See also, Kahan v. Rosenthiel, 424 F.2d 161 (3d Cir.), cert. denied, 398 U.S. 950, 90 S.Ct. 1870, 26 L.Ed.2d 290 (1970).

20. Haberman v. Murchison, 468 F.2d 1305, 1311 (2d Cir. 1972); Greenstein v. Paul, 400 F.2d 580 (2d Cir. 1968); Drachman v. Harvey, 453 F.2d 722, 731 (2d Cir. 1972); Iroquois Indus., Inc. v. Syracuse China Corp., 417 F.2d 963 (2d Cir. 1969), cert. denied, 399 U.S. 909, 90 S.Ct. 2199, 26 L.Ed.2d 561 (1970).

21. Vine v. Beneficial Finance Corp., n. 18, *supra;* Mutual Shares Corp. v. Genesco, Inc., n. 18, *supra;* Ruckle v. Roto American Corp., 339 F.2d 24 (2d Cir. 1964).

22. Hirsch v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 311 F.Supp. 1283, 1289 (S.D.N.Y.1970).

fit and, therefore, the court "should not be loath to look behind the legal technicalities of a transaction in order to protect those whose interests the statute was designed to safeguard."[23] The court found that the standing requirements of *Birnbaum* were satisfied because the plaintiff was the party who stood to gain or lose by the sale and should therefore be considered the seller of the securities.

■ We agree with the realistic approach of *Heyman*, but we think *Heyman* does not depart from the longstanding requirement of this circuit that a § 10(b) plaintiff must be a purchaser or seller of securities. Rather, the case stands for the proposition that in applying *Birnbaum* to the real world, courts should not exalt the form of transactions over their substance.[24]

■ ■ In any event, this case is clearly distinguishable from *Heyman*. In essence, plaintiff here seeks to recover damages from the defendants for their mismanagement of Chem Seps and breach of their fiduciary duty to shareholders of Chem Seps. Congress did not intend, and the *Birnbaum* rule has consistently been interpreted, to prevent the use of § 10(b) and Rule 10b–5 as vehicles for suits based on mere corporate mismanagement or breach of fiduciary duty.[25] Such claims are commonly cognizable under state law and are not magically transformed into § 10(b) actions merely because the alleged mismanagement or breach of fiduciary duty involved a sale of securities. Where, as here, plaintiff cannot allege that he is a purchaser or seller of securities, he has no standing to sue under § 10(b) or Rule 10b–5. Therefore, plaintiff's second claim must also be dismissed.

The fourth and fifth claims of the complaint are based upon alleged violations by the defendants of §§ 107.-1004(a) and 107.901(a)[26] of the Small Business Administration (SBA) regulations. The defendants contend that there is no private right of action for violation of the SBA regulations and, therefore, that the fourth and fifth claims should be dismissed.

Neither the regulations themselves, nor the Small Business Investment Act expressly mandate a private right of action for violations. Nor has any court ever held that a private right of action may be implied from the SBA regulations. Federal courts do, however, infer private rights of action from federal regulatory statutes where such an inference is consistent with the legislative intent and purpose of the statutes.[27] Plaintiff argues that, as a shareholder in Chem Seps, a small business concern, he is a member of the class congress and the SBA sought to protect and, therefore, should have a remedy for any damage he has suffered as a result of defendants' violations of the regulations.

■ SBA Regulations §§ 107.901(a) and 107.1004(a) were promulgated pur-

---

**23.** Heyman v. Heyman, *supra*, 356 F.Supp. at 966.

**24.** *Id.* at 965.

**25.** Superintendent of Insurance v. Bankers Life & Cas. Co., 404 U.S. 6, 12 (1971); James v. Gerber Products Co., 483 F.2d 944, 949 (6th Cir. 1973); Herpich v. Wallace, *supra*, 430 F.2d at 808; O'Neill v. Maytag, 339 F.2d 764 (2d Cir. 1964); Heyman v. Heyman, *supra*, 356 F.Supp. at 964–965.

**26.** The Regulations provide:
"§ 107.901
(a) General: The Act does not contemplate that Licensees shall operate business enterprises or function as holding companies exercising control over such enter-

prises. Accordingly, neither a Licensee, nor a Licensee and its Associates, nor two or more Licensees may, except as hereinafter set forth, assume control over a small business concern pursuant to management agreements, voting trusts, majority representation on the board of directors, or otherwise."
"§ 107.1004
(a) General. Self-dealing to the prejudice of a small business concern, or of a Licensee or its shareholders, or of SBA, is prohibited."

**27.** See, *e. g.*, J. I. Case Co. v. Borak, 377 U. S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); Kardon v. National Gypsum Co., 69 F.Supp. 512 (E.D.Pa.1946).

suant to 15 U.S.C. §§ 687(c), 687d and 687g, and plaintiff contends that the language and legislative history of these statutory provisions support a private right of action under the regulations. We disagree because we think the statute and its legislative history evidence a congressional intention to place enforcement of the statute solely within the discretion and jurisdiction of the SBA.

Under § 687(c) of 15 U.S.C., the SBA "is authorized to prescribe regulations governing the operations of small business investment companies, and to carry out the provisions of this Act, in accordance with the purposes of this Act."

Similarly, § 687d provides that "[f]or the purpose of controlling conflicts of interest which may be detrimental to small business concerns . . . the Administration shall adopt regulations to govern transactions" which constitute conflicts of interest. Thus, the statutory language shows a clear congressional intent that the SBA Act as a whole, and § 687d, in particular, be enforced not by private plaintiffs but by the SBA.

The legislative history of § 687d also evidences the congressional intent to leave enforcement of the Act to the SBA. The House Report gives this rationale for § 687d:

"[A]lthough the SBA has promulgated regulations on conflict of interest, it has been felt desirable to make doubly sure that adequate safeguards against possible conflicts of interest are in effect at all times." [28]

Thus, faced with the problem of conflicts of interest in small business concerns, congress sought a solution by instructing the SBA to deal with and pre-vent conflicts of interest and by giving it the explicit authority to do so.

In 1966, when it enacted 15 U.S.C. § 687f, congress adopted a similar approach to preventing breaches of trust and fiduciary duty, dishonesty and fraud by persons affiliated with small business investment companies. The House Report contained this statement of the statutory purpose:

"The House and Senate bills are substantively the same and are equally intended to provide the SBA with needed tools to improve the operation of the small business investment company program . . . [T]he full potential of the SBIC program has remained unfulfilled because of the inability of SBA to deal promptly and effectively with violations of the SBI Act and regulations issued thereunder. This bill should fill that legislative gap." [29]

■■■ Our reading of the language and legislative history of the SBI Act convince us that congress intended enforcement of the statute to be undertaken solely by the SBA. We think the establishment of a private right of action under the SBA Regulations would not only interfere with the smooth functioning of the regulatory process established by congress, but also conflict with the legislative intent.[30] We hold, therefore, that a private right of action may not be maintained for violation of the SBA Regulations, and, accordingly, the fourth and fifth claims of the complaint must be dismissed.[31]

We turn now to plaintiff's cross-motion.

28. H.R.No.1084, Pub.L.No.88–273, 88th Cong., 2d Sess, 1964 U.S.Code Cong. and Admin.News p. 2015.

29. H.R.No.2159, Pub.L.No.89–779, 89th Cong., 2d Sess, 1966 U.S.Code Cong. and Admin.News pp. 4200, 4202.

30. *Cf.* National Railroad Passenger Corp. v. National Ass'n of Railroad Passengers, 414

U.S. 453, 94 S.Ct. 690, 38 L.Ed.2d 646 (1974).

31. Although all of plaintiff's federal claims for relief must be dismissed, we retain jurisdiction under 28 U.S.C. § 1332, it appearing from the complaint that there is diversity of citizenship between the parties and that the amount in controversy exceeds $10,000.

Plaintiff moves to dismiss both of the counterclaims alleged in Columbia's amended answer.[32]

The first counterclaim alleges that plaintiff wrongfully interfered with the contract between Columbia and Chem Seps for the sale of Chem Seps' patents and with the contract between Chem Seps and Foster Wheeler for the sale of Chem Seps stock. Plaintiff contends that the first counterclaim should be dismissed because (1) it fails to allege that plaintiff induced a breach of contract, and (2) Columbia is not a party to the Chem Seps-Foster Wheeler contract and, therefore, lacks standing to sue.

 It is not necessary, as plaintiff erroneously argues, to allege a breach of contract in order to state a valid claim for interference with contractual relations. The tort extends to cases in which performance of the contract is rendered more difficult or a party's enjoyment of the contract's benefits is lessened by the wrongdoer's actions.[33] In New York, "an unlawful interference with a person in the performance of his contract with a third party is just as much a legal wrong as is an unlawful inducement of a breach of that contract by the third party."[34]

 The first counterclaim alleges that plaintiff's actions rendered Columbia's performance of its contract with Chem Seps more costly and reduced the benefits of the contract to Columbia. It, therefore, alleges a sufficient claim for interference with contractual relations.[35]

 Plaintiff also contends that Columbia lacks standing to sue for interference with the Chem Seps-Foster Wheeler contract because Columbia is not a party to that contract. The counterclaim does allege, however, that plaintiff also interfered with the contract between Columbia and Chem Seps. Moreover, it is alleged that the two contracts were interrelated and that plaintiff's interference with the Chem Seps-Foster Wheeler contract delayed the consummation of the Columbia-Chem Seps contract, thus damaging Columbia. As a party to the latter contract, Columbia may recover damages for plaintiff's wrongful interference with that contract. We, therefore, reject plaintiff's arguments, and the motion to dismiss the first counterclaim must be denied.

The second counterclaim purports to state a claim for fraud under § 10(b) of the Securities Act, the Tennessee Corporation Code and the common law. Plaintiff claims that this counterclaim is insufficient in law and does not comply

---

32. We dismissed the first counterclaim, as originally pleaded by Columbia in its answer, with leave to replead, on December 19, 1973.

33. C. E. Carpenter, Interference with Contract Relations, 41 Harv.L.Rev. 728, 731–32 (1928); see also Prosser, Torts § 123 at 959–60 (4th ed. 1970); 1 Harper and James, The Law of Torts § 6.9 at 499–501 (1956); F. V. Harper, Interference with Contractual Relations, 47 Nw.U.L.Rev. 873, 883 (1953).

"Protection is afforded the interest in contractual relations against harms other than inducement of breach. We may generalize that any intended and unprivileged interference which causes loss to either party to a transaction is actionable by the party suffering the loss. . . . Thus, any conduct which is intended to and which, in fact,

makes performance more onerous is, unless privileged, a tort against the promisor." Harper, *supra*, 47 Nw.U.L.Rev. at 883.

34. Morris v. Blume, 55 N.Y.S.2d 196, 199 (Sup.Ct., N.Y.Co.), affd, 269 App.Div. 832, 56 N.Y.S.2d 414 (1st dep't 1945); Navarro v. Fiorita, 271 App.Div. 62, 62 N.Y.S.2d 730 (1st dep't 1945), aff'd, 296 N.Y. 783 (1947); Haggerty v. Burkey Mills, 211 F.Supp. 835, 837 (E.D.N.Y.1962); 32 N.Y.Jur., Interference §§ 35, 36 at 193–94.

35. De-Jur Amsco Corp. v. Janrus, 16 Misc.2d 772, 155 N.Y.S.2d 123 (Sup.Ct., N.Y.Co. 1950); Metropolitan Opera v. Wagner-Nichols Recorder Corp., 199 Misc. 786, 802–803, 101 N.Y.S.2d 483 (Sup.Ct., N.Y.Co. 1950), aff'd, 279 App.Div. 632, 107 N.Y.S.2d 795 (1st dep't 1951).

with Rule 9(b), Fed.R.Civ.P.,[36] in that it does not allege with particularity the circumstances constituting fraud.

■ Because strike suits are especially common in fraud litigation and allegations of fraud are deemed serious matters, courts have been sensitive to the Rule 9(b) requirement that the circumstances constituting fraud be alleged with particularity.[37] Mere conclusory allegations that conduct was fraudulent, or in violation of § 10(b), are not sufficient.[38] "Facts must be alleged which, if proven, would constitute fraud or which lead clearly to the conclusion that fraud has been committed." [39]

■ The second counterclaim fails to meet the Rule 9(b) requirement of particularity. It merely states that plaintiff obstructed the attempts by Chem Seps' management to increase the corporation's working capital, without revealing that he did so in his own interest, and that this conduct "was a scheme, device and course of business which operated as a fraud upon the shareholders of Chem Seps . . . ." Such general and conclusory allegations of fraud are insufficient under Rule 9(b).[40] The mere statement that a party's conduct has been fraudulent is not sufficient. Defendants have totally failed to allege, in specific terms, the actions and statements of plaintiff which are claimed to be fraudulent.

Moreover, the second counterclaim fails to allege certain essential elements of a claim for fraud. First, the counterclaim does not allege that Columbia is a purchaser or seller of securities and, therefore, Columbia may not maintain an action under § 10(b). Nor does the counterclaim allege that Columbia relied upon or was deceived by plaintiff's actions. The second counterclaim, therefore, must be dismissed insofar as it purports to assert a claim for fraud. The second counterclaim also purports to allege some unidentified, vague and conclusory claim for "breach of the duty [plaintiff] owed to the shareholders of Chem Seps," under the Tennessee Corporation Code and the common law. Again, Columbia fails to allege concrete facts setting forth a claim for relief under the laws invoked. Therefore, plaintiff's motion to dismiss the second counterclaim must be granted, with leave to replead within ten (10) days.

Accordingly, defendants' motion to dismiss the first, second, fourth and fifth claims alleged in the complaint is granted. Plaintiff's motion to dismiss the first counterclaim is denied. Plaintiff's motion to dismiss the second counterclaim is granted, with leave to replead within ten (10) days.

So ordered.

---

36. Rule 9(b), Fed.R.Civ.P., provides: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

37. Segal v. Gordon, 467 F.2d 602 (2d Cir. 1972).

38. Shemtob v. Shearson, Hammill & Co., 448 F.2d 442, 444 (2d Cir. 1971); Matheson v. White Weld & Co., 53 F.R.D. 450, 452 (S.D.N.Y.1971).

39. Chicago Title & Trust Co. v. Fox Theatres Corp., 182 F.Supp. 18, 31 (S.D.N.Y. 1960).

40. Segal v. Gordon, *supra*, 467 F.2d at 608.