HARRY B. CORAN,
Plaintiff,

*vs.*

MERLE THORPE ET AL.,
Defendants.

*New Castle, September 15, 1964.*

■■■■■■■

■■■■■■■■■■■■■■■■

*Irving Morris*, of Cohen & Morris, Wilmington, and *Milton Paulson*, New York City, for plaintiff.

*Richard F. Corroon*, of Berl, Potter & Anderson, Wilmington, for defendants, Hartwell, Steers and Thorpe.

*E. D. Griffenberg, Jr.*, of Killoran & VanBrunt, Wilmington, for defendant, Atomics, Physics and Science Fund, Inc.

SEITZ, Chancellor : This is a stockholder's derivative action against Atomics, Physics and Science Fund, Inc. ("Fund") and its directors. Plaintiff seeks a declaration that certain underwriting and management contracts between Fund are void primarily because of alleged failure to

comply with certain requirements of the Investment Company Act of 1940. On this premise plaintiff seeks an accounting of defendants' profits as well as the damages allegedly sustained by the Fund. A trial was held solely to determine the issue of liability and this is the decision thereon.

The Fund was incorporated in 1952 and thereafter sold shares to the public. Plaintiff became a stockohlder in 1956. The Fund was organized by two of the defendants, Thorpe and Steers. They have served as Chairman and President respectively of the Fund since its inception. Certainly they have been the "guiding spirit" of the Fund. Both are law school graduates. Thorpe is a partner in a Washington, D. C. law firm while Steers, prior to the organization of the Fund, held various positions with the Atomic Energy Commission.

From its beginning and until 1956 the Fund had a contract for investment advisory and certain management services with the New York Stock Exchange firm of Auchincloss, Parker & Redpath. The Auchincloss firm was paid an annual fee of .50% of the average Fund assets, less .16% which the Fund paid for technical advice to Nuclear Development Corp. of America ("NDA"). During this period, Steers and Thorpe received no compensation for their executive services to the Fund.

Commencing July 1, 1956, and continuing to April 1, 1959, the Fund employed Atomic Development Management Corporation ("Atomic Management") as manager at an annual fee of .22% of average assets and employed the Auchincloss firm as investment adviser at a fee of .28% of average assets. Steers and Thorpe owned the capital stock of Atomic Management. Atomic Management and the Auchincloss firm bore jointly the technical advisory fees of NDA which were at the rate of .12% until July 1, 1957 and .08% thereafter. On assets above $50,000,000, the aggregate of fees paid Atomic Management and the Auchincloss firm were reduced from .50% to .40%.

Since April 1, 1959, Atomic Management has acted as both investment adviser and manager of the Fund at a fee scale equal to the combined rate theretofore paid Atomic Management and the Auchincloss firm. Atomic Management also bore the fees of the Fund's tech-

nical adviser up to October 1962, at which time technical advisory services were terminated.

A partnership of Steers and Thorpe acted as distributor of Fund shares until August 1955, at which time they organized Atomic Development Securities Co., Inc. to act as distributor. This company was merged into Atomic Management on June 30, 1960, at which time the corporate name Columbian Financial Corporation was adopted.

Plaintiff's principal argument is that the challenged advisory service and underwriting agreements were approved by boards of directors a majority of whose members were "affiliated directors" within the meaning of that term in the Investment Company Act of 1940 and that, in consequence, they were void under the pertinent provisions of the Act. Passing over the consequences of certain stockholder action, the issue I now consider is whether the board action complied with the requirements of the Act.

Three of the thirteen directors generally involved were admittedly affiliated (Thorpe, Steers, Hartwell), three were admittedly non-affiliated (Krebs, Warren, Dodge), two were allegedly "window-dressing" directors (Landa and Kunzel) and the remaining five were alleged by plaintiff to be controlled or "affiliated" directors within the meaning of the Act because of their relationship to the adviser-underwriter (Sullivan, Buxton, Fleming, Menke, Merritt). I here pass over the window-dressing charge directed to the directors Landa and Kunzel, whatever that may mean in the context of the issue under discussion. I do this because, assuming they were counted as non-affiliated or "independent" directors, a majority of the board would still be affiliated directors if plaintiff's contention concerning the other five is correct. Thus it is depositive of plaintiff's charge to resolve the issue concerning "the five". Needless to say, defendants contend that the five were not affiliated within the meaning of that term in the Act.

Plaintiff contends that the benefits received from the Fund by the entities with which the five directors were connected (Fund's adviser and underwriter) created such an "interest" in them that, without more, they were "affiliated" directors within the meaning of that term in the Act.

What benefits were received by "the five" from the investment adviser and underwriter? Sullivan was a partner in the Auchincloss firm and until 1959 it served as adviser to the Fund and was at all times the recipient of substantial brokerage commissions on the purchase and sale of Fund's portfolio securities. In the years 1957–1959 it also received very substantial advisory fees. Sullivan presumably shared in the profits of the brokerage firm.

Buxton was a salaried employee of Auchincloss and Sullivan's subordinate.

Fleming's brokerage firm acted as broker in various security transactions for Fund and received rather modest commissions in certain years. Fleming presumably shared in the firm's profits.

Menke was president and the most substantial stockholder of Nuclear Development Corp. of America which later merged with United Nuclear Corp. For some years Nuclear was retained by Fund to provide technical advice with its compensation originally being .16% of Fund's net assets annually. The fee varied in subsequent years until October 1962 when it terminated. Nuclear received substantial fees in most of the years involved.

Merritt is a geologist employed by Longyear Company. He was a director until 1960. During this period Longyear was under retainer with Nuclear to provide it with advice in certain fields which it in turn would provide to Fund under its technical advisory contract.

Assuming that each of the five was benefitted or "interested" by virtue of the relationship of the Fund to the firm with which each was associated, does the benefit or "interest" make them "affiliated" directors within Section 2(a) (3) (C) of the Act which defines an "affiliated person" as "[A]ny person directly or indirectly controlling, controlled by, or under common control with, such other person". Control, insofar as here pertinent, is defined as follows:

"(9) 'Control' means the power to exercise a controlling influence over the management or policies of a company, unless such power is solely the result of an official position with such company.

"* * * A natural person shall be presumed not to be a controlled person within the meaning of this title. Any such presumption may be rebutted by evidence, but except as hereinafter provided, shall continue until a determination to the contrary made by the Commission by order either on its own motion or on application by an interested person. * * *"

Preliminarily, defendants argue that only the S. E. C. can pass on the control issue because of the wording of the Act. Since the S. E. C. has ruled that the courts also have jurisdiction to pass on the issue of "control" under the Act and since there has not yet been any authoritative court ruling to the contrary, I take it to be established that this court has jurisdiction to resolve such an issue (In the *Matter of Fundamental Investors, Inc., Investment Co. Act. Rel.* #3596).

I come then to the meaning of the quoted language concerning control. The definition of control shows that it was not primarily tailored to a situation such as is here presented, which involves the alleged control of natural persons. However, the provision concerning "control" does state that "A natural person shall be presumed not to be a controlled person within the meaning of this title." Clearly, the quoted language contemplates that an issue may be created concerning the independence of a particular director. This issue may relate to his independence in many contexts but certainly one would be his independence when considered in conjunction with the Fund's relationship to its investment or other adviser or its underwriter.

In view of the quoted language of the Act the issue as to whether the five directors were controlled and thus "affiliated" is one of fact concerning an individual's state of mind. Thus, it cannot be true that evidence of a relationship resulting in an economic benefit or interest, in and of itself, compels a finding that such person is a controlled person. The language of the Act clearly visualizes the taking of all evidence relevant to this issue. This would mean that no "one" fact would automatically call for a finding that a director was "controlled". Nor is the soundness of this construction of the Act weakened by the contention of plaintiff that proof is neither necessary nor possible that the votes of Fund's directors were influenced by the benefits which they received. The treatment of such relationships was

in the first instance a matter for the Congress. Plaintiff is really arguing as to what the Act should provide. But as I read the Act such relationships between a director and, inter alia, his Fund's advisers are not automatically barred in the present situation. Thus, this Court is not free to engraft such a prohibition on the Act, whether or not it would be desirable.

■■ I therefore conclude that proof of an economic relationship between a Fund director and its advisers, underwriters or brokers does not, ipso facto, overcome the burden and compel the conclusion that he is a controlled or affiliated director within the meaning of these terms in the Act. This conclusion would appear to find support in *Acampora v. Birkland, D.C.,* 220 *F.Supp.* 527; and see *Rome v. Archer,* 41 *Del.Ch.* 404, 197 *A.2d* 49.

Plaintiff does not contend that an evaluation of all relevant facts compels the conclusion that the five identified directors were in fact controlled and thus were "affiliated" directors under the Act. I therefore express no opinion on that point. Nor need I delineate all the facts which would be pertinent to that issue.

Plaintiff next argues that the Fund's board, as a whole, failed to exercise that degree of independent judgment ordinarily expected of corporate directors. I assume that this allegation is not based on the Act but is a charge that the directors violated their duty under pertinent Delaware corporation law standards.

I pass over a question as to whether this charge is properly related to issues concerning the management, underwriting and advisory contracts.

■ Plaintiff first complains that the executive committee of the board made all decisions for the purchase and sale of securities and thereafter reported them to the board. Considering the nature of the business the practice described does not warrant any finding that the board failed in its duty. There is no suggestion that the board was not justified in relying on the judgment of the executive committee. Nor does the fact that the Fund's corporate records show that the board

members present unanimously approved practically every proposal of management justify a finding of director infidelity. Indeed, it is not uncommon and indeed desirable, if reasonably possible, for differences within management to be ironed out before final corporate action is taken.

Finally, plaintiff makes much of the fact that the board permitted the Auchincloss firm to act as advisor until in 1959 the Illinois Securities Commission ruled that it was against public policy for a fund adviser to receive brokerage commissions on transactions based on its advice. Plaintiff says that a truly independent board would not have needed governmental action before correcting this "obvious vice". Passing over the fact that Illinois has since rescinded the ruling (contained in a Regulation), the fact is that the practice was not contrary to the provisions of the Investment Company Act. Additionally, the Illinois ruling was not so clearly the only proper result that the board showed lack of independence by not anticipating it.

I therefore conclude that plaintiff failed to sustain his burden of showing the lack of independence of the Board as a whole.

It is my conclusion that plaintiff failed to prove a violation of the Investment Company Act of 1940 or of the Delaware corporation law. Thus, the complaint must be dismissed. It is not necessary to consider other arguments presented by the parties.

Present order on notice.