**GENERAL TIME CORPORATION,**
Plaintiff,

v.

**AMERICAN INVESTORS FUND, INC.,**
**Talley Industries, Inc., Franz G. Talley,**
**M. Kimelman & Co., Michael G. Kimel-**
**man, Oscar Kimelman and Smith, Bar-**
**ney & Co., Incorporated, Defendants.**

**No. 68 Civ. 768.**

United States District Court
S. D. New York.

April 17, 1968.

Chadbourne, Parke, Whiteside &
Wolff, New York City, for plaintiff.

Donovan, Leisure, Newton & Irvine,
New York City, for defendants, Talley
Industries, Inc., Franz G. Talley, M. Kim-
elman & Co., Michael G. Kimelman and
Oscar Kimelman.

Davis, Polk & Wardwell, New York City, for defendant, Smith, Barney & Co., Inc.

O'Connor & Farber, New York City, for defendant, American Investors Fund, Inc.

## OPINION

FREDERICK van PELT BRYAN, District Judge:

This action arises out of an alleged attempt by the defendants to take over control of plaintiff General Time Corporation (Time) and merge it into Talley Industries (Talley). Time is a Delaware corporation with its principal place of business in Connecticut. The defendant, American Investors Fund, Inc. (Fund), is a diversified open-end investment company incorporated in New York and subject to the provisions of the Investment Company Act of 1940, 15 U.S.C. §§ 80a–1 et seq. Fund owns more than 5% of the outstanding stock of Talley. Defendant Franz Talley is president and a director of Talley. M. Kimelman & Co. is a New York brokerage firm; a partner of the firm, Oscar Kimelman serves on Talley's board of directors. The remaining defendant, Smith, Barney & Co. Incorporated is a Delaware corporation engaged in the brokerage business in New York.

The complaint alleges two claims for injunctive relief. The first is based on the Investment Company Act of 1940 and charges in substance that Fund and Talley are engaged in a joint enterprise to take over plaintiff without approval of the SEC and in violation of the investment policies of the Fund. The second claim realleges the same facts and seeks relief under §§ 10(b) and 16(a) of the Exchange Act, and Rule 10b–5. All the defendants have moved to dismiss both claims of the complaint for want of

standing to sue and for failure to state claims upon which relief can be granted.

## I.

The first claim for relief is based on the Investment Company Act and is directed at Fund's alleged conduct. Two violations of the Act are claimed. First, it is alleged that Fund and Talley have engaged in a "joint enterprise or arrangement" between the Fund and an "affiliated person"[1] without the prior approval of the SEC, in violation of § 17(d), 15 U.S.C. § 80a–17(d), and Rule 17d–1, 17 C.F.R. § 270.17d–1.[2] The second claim alleged is that pursuant to this joint arrangement, Fund has purchased Time stock with the object of exercising control or management in violation of a Fund policy to make purchases for investment purposes alone. Plaintiff argues that Fund's policy to purchase for investment only is a fundamental policy as defined in § 8(b)2 of the Act, and thus cannot be changed without a prior vote of its shareholders. 15 U.S.C. § 80a–13(a). While Fund asserts that its conduct does not violate the Investment Act, I do not reach that issue since I have concluded that plaintiff has no standing to sue for the violations of the Investment Company Act that Fund has allegedly committed.

The Investment Company Act was designed to provide a comprehensive regulatory scheme to correct and prevent abusive practices in the management of investment companies. Congress intended this protection to be for the benefit of persons having an interest in those companies. While the Act itself does not specifically provide any private right of action, such right has been implied by the courts. See, e. g., Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961) (en banc). Standing to assert claims under the Investment Act extends to any person hold-

1. The affiliation between Talley and Fund arises from Fund's ownership of over 5% of Talley's outstanding stock.

2. Subsequent to the argument of these motions to dismiss, Fund and Talley applied to the SEC for an order authorizing the alleged joint enterprise. In that application defendants take the position that no joint arrangement exists and request an order declaring their conduct to lie without the scope of § 17–d.

ing an ownership interest in a company subject to the Act. E. g., Green v. Brown, 276 F.Supp. 753 (S.D.N.Y.1967); Entel v. Guilden, 223 F.Supp. 129 (S.D. N.Y.1963).[3] But where persons who are not shareholders have sought to object to a registered company's conduct, standing has been denied. Greater Iowa Corp. v. McLendon, 378 F.2d 783 (8th Cir. 1967).[4]

In my view, plaintiff plainly has no standing here. Its sole connection with the Fund is the Fund's open market purchases of General Time stock. The claim that Fund is violating its fundamental policies by purchasing for control rather than investment may well be of interest to Fund shareholders but is not a matter in which plaintiff has any recognizable interest. Nor may plaintiff avail itself of the alleged violation of § 17(d), since the proscription of unapproved joint arrangements with affiliates was intended to protect the Fund shareholders from having their company enter into transactions with affiliates on inequitable terms. Consequently, the plaintiff has no standing to sue on its first claim for relief.

## II.

The second claim for relief is predicated upon Section 10 of the Securities Exchange Act, and Rule 10b–5 promulgated thereunder. The complaint alleges that the defendants have concealed from plaintiff and its shareholders material facts in connection with their purchases of Time stock. Among the omissions claimed is the failure to inform sellers that Talley intended to force a merger with Time, that Talley and Fund were acting in concert, and that defendant

Smith, Barney & Co. Incorporated was acting for Talley when it made a special bid for Time stock. No claim is made that Time, the issuing corporation, made any purchases or sales of its own stock during the time period when the purchases by defendant were made. The complaint simply alleges that defendants' acts and omissions "have likewise created uncertainty as to the future course and conduct of plaintiff's business, impeded and complicated plaintiff's plans for future operations and adversely affected the morale of plaintiff's employees, all to the great damage of plaintiff and its stockholders other than defendants."

I have expressed before my doubt that an issuing corporation has standing to assert a claim under 10b–5 arising out of transactions to which it was not a party. See Allied Artists Pictures Corp. v. D. Kaltman & Co., 283 F.Supp. 763 (S.D.N.Y.1967). This view is in accord with the weight of authority. The usual rationale is that no injury results to the issuing corporation in such circumstances. See Schoenbaum v. Firstbrook, 268 F.Supp. 385 (S.D.N.Y.1967); Pacific Ins. Co. of New York v. Blot, 267 F.Supp. 956 (S.D.N.Y.1967); Hoover v. Allen, 241 F.Supp. 213 (S.D.N.Y.1965); compare Symington Wayne Corp. v. Dresser Indus., Inc., 383 F.2d 840 (2d Cir. 1967). Contra, Moore v. Greatamerica Corp., 274 F.Supp. 490 (N.D.Ohio 1967). Similarly, stockholders bringing derivative actions on behalf of a corporation under Rule 10b–5 are required to show that the wrongdoing charged resulted in injury to the corporation, and not just to individual shareholders who might have bought or sold in reliance on the alleged misrepresentations. See Cohen v. Colvin,

3. In Schwartz v. Bowman, 156 F.Supp. 361 (S.D.N.Y.1957), appeal dismissed, 264 F. 2d 195 (S.D.N.Y.1959), the C. & O. Railroad, which had sold New York Central stock to Alleghany Corporation, was permitted to sue on a claim alleging that the contract of sale was voided by Alleghany's failure to register under the Investment Company Act. No comparable situation is presented by the case at bar.

4. But see Natco Corp. v. Great Lakes Indus., Inc., 214 F.Supp. 185 (W.D.Pa. 1962), where the court permitted a corporation threatened with takeover to claim that defendant was required to register under the 1940 Act and had not done so; plaintiff's standing to raise such a claim was assumed by the opinion without discussion.

266 F.Supp. 677 (S.D.N.Y.1967); Polakoff v. Delaware Steeplechase and Race Assoc., 254 F.Supp. 574 (D.Del.1966).

This principle seems particularly appropriate in cases involving attempted takeovers. The incumbent management has no protected interest in remaining in power. While the fight for control must be waged in accordance with the securities laws, enforcement has been left to the individual shareholders [5] who bought or sold their shares or to the SEC, except where the insurgent group is misusing its right to circularize shareholders through the corporation's proxy machinery. See Studebaker Corp. v. Gittlin, 360 F.2d 692 (2d Cir. 1966).

While recent cases in this circuit have weakened the requirement of privity enunciated in such early cases as Birnbaum v. Newport Steel Corp., 193 F.2d 461 (2d Cir. 1952), and Joseph v. Farnsworth Radio & Television Corp., 99 F. Supp. 701 (S.D.N.Y.1951), aff'd, 198 F. 2d 883 (2d Cir. 1952), none has gone so far as to permit an action by the issuing corporation in a takeover situation. In Vine v. Beneficial Finance Co., 374 F.2d 627 (2d Cir. 1967), the court held that a statutory merger forced a sale within the meaning of Rule 10b–5. Accord, Voege v. American Sumatra Tobacco Corp., 241 F.Supp. 369 (D.Del.1965). The concept of what conduct constitutes a "scheme to defraud" under the Rule was broadened in A. T. Brod & Co. v. Perlow, 375 F.2d 393 (2d Cir. 1967).

Some guidelines to the current expansion of Rule 10b–5 were suggested in Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967). There the gravamen of the complaint was that plaintiff had been induced to buy stock of S. H. Kress by the omission of material facts from a tender offer for Kress stock made by defendant Genesco. In dismissing this claim, the court emphasized that the tender offer was not directed at plaintiff, who chose to buy stock, but at Kress shareholders to induce them to sell to Genesco.[6]

■ An analogous situation prevails in the case at bar. The conduct alleged in the complaint, if found improper at trial, might injure individual stockholders of plaintiff who sell their stock to defendants. But defendants' conduct affects stockholders and not the corporation. Defendants' alleged intention to merge plaintiff with Talley, and perhaps to replace the incumbent management, is not by itself a wrong to the corporation about which the corporation can complain at this juncture. Cf. Symington Wayne Corp. v. Dresser Indus., Inc., 383 F.2d 840 (2d Cir. 1967). Plaintiff has no standing to sue for the alleged 10b–5 violations.

■ Plaintiff also claims that Fund, Talley and Kimelman are the beneficial owners of more than 10% of General Times' outstanding stock, and that they have wilfully failed to disclose this information to the SEC in violation of § 16(a) of the Securities Exchange Act. Defendants contend that they have fully complied with the reporting requirements of § 16(a). In my view, plaintiff is not entitled to assert a violation by defendants of § 16(a), nor have I been cited to any case permitting it to do so. To the extent that the conduct alleged to violate § 16(a) is urged as an additional ground under 10b–5, plaintiff lacks any standing to sue.

The motions to dismiss the complaint for want of standing to sue are granted.

It is so ordered.

---

**5.** If as a result of the alleged misrepresentations or the wrongful conduct of its officers, the corporation is induced to purchase or sell shares, then it may sue under 10b–5. See Dasho v. Susquehanna Corp., 380 F.2d 262 (7th Cir. 1967).

**6.** The Court of Appeals in *Mutual Shares* also held that a complaint which alleged that Genesco, once it acquired control of Kress, was deceitfully manipulating the market in Kress stock in order to depress the price, stated a claim for relief under 10b–5. No allegations of this nature are made by the complaint here.