Charles **MONHEIT**, Plaintiff,

v.

Arthur L. **CARTER** et al., Defendants.

**No. 73 Civ. 2470 HRT.**

United States District Court,
S. D. New York.

May 16, 1974.

9. Since the complaint is dismissed, there is no need to reach plaintiffs' class action motion.

Lipper, Keeley, Lowey & Dannenberg, by Richard B. Dannenberg and Aaron Lipper, New York City, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, by Arthur L. Liman and Robert S. Smith, New York City, for defendants Arthur L. Carter, Richard Graham, Mark N. Kaplan, William Lerner, Kenneth S. Rosen, Tom Scheinman, Utilities & Industries Corp., Utilities & Industries Management Corp., and The Carter Group Inc.

Schaeffer, Dale, Vogel & Tavrow, New York City, for defendants Philip M. Getter, Irving H. Dale, Albert N. Greenfield, and Walter H. Saunders.

Cleary, Gottlieb, Steen & Hamilton, New York City, for defendants Allan R. Tessler, Donald M. Gleklen and Edmund H. Kerr.

Friedmann, Fischman, Chikofsky & Greenberg, New York City, for defendant Herbert Braasch.

Kulak & Lerner, New York City, for defendant Robert B. Friedman.

## OPINION

TYLER, District Judge.

This is a motion, pursuant to F.R. Civ.P. 12(c), to dismiss counts 2, 3, 5, 6, 8, 9 and part of counts 4 and 10 of plaintiff's complaint. The plaintiff in this action, Charles Monheit, owns 1,700 shares of defendant Fifth Avenue Coach Lines, Inc. ("Coach Lines"),[1] and is suing, in addition, certain other corporate and individual defendants who exercise or used to exercise control over Coach Lines.

The defendants are Coach Lines, Utilities & Industries Corporation ("U&I"), Utilities & Industries Management Corp. ("Management"), The Carter Group Inc. ("Carter Group"), and twelve present and five former directors of Coach Lines. The complaint states that U&I, through its wholly-owned subsidiary, Management, was the beneficial owner of 44.36% of Coach Lines' stock from January 1, 1973 to May 30, 1973. During this same period, plaintiff alleges that Carter Group owned 30% of the common stock of U&I, which amount it has since increased to 50%. According to plaintiff, therefore, U&I, Management, and Carter Group were all controlling persons of Coach Lines.

Coach Lines is the nominal defendant on behalf of which count 10 of the complaint is brought derivatively. On August 12, 1968, a trustee and receiver for Coach Lines were appointed by the United States District Court for the Southern District of New York. On October 2, 1968, the trustee caused Coach Lines

---

1. This name has since been changed to "The South Bay Corporation." The corporation will be referred to here, however, as "Coach Lines" since that is the name used by the litigants in their papers.

to register under the Investment Company Act of 1940, 15 U.S.C. § 80a–1 et seq. The trusteeship was terminated on June 16, 1972 and the management of Coach Lines reverted to its Board of Directors, the members of which had been elected on June 15, 1970 at a meeting of the shareholders held under the supervision of the court.

In general, the activities about which plaintiff complains include defendants' acquisition of control over Coach Lines; the issuance of a false proxy statement soliciting proxies for the May 30, 1973 meeting of the Coach Lines' shareholders; the election of too few disinterested directors; and the unwise purchases of certificates of deposit and common stock of other companies.

Defendants' instant motion to dismiss is based primarily on the argument that plaintiff belongs in state rather than federal court. According to defendants, plaintiff is improperly seeking to invoke the antifraud provisions of the federal securities laws to bring what are essentially state claims into federal court. For the reasons hereinafter stated, defendants' motion to dismiss is denied, except as to certain portions of count 3.

I

In count 1, plaintiff alleges material violations of § 13(d) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78m(d), and the rules promulgated thereunder, 17 C.F.R. § 240.13d–1. At the heart of this claim is the charge that the defendants conspired to acquire capital shares of Coach Lines in a deceptive and illegal fashion. In addition, plaintiff states that the de-

fendants failed to file proper reports with the Securities Exchange Commission ("SEC") and failed to disclose certain arrangements made in connection with the acquisition of stock. The defendants have not denied that this count is properly before this court.

II

In count 2 of his complaint, plaintiff claims that the defendants violated § 14(f) of the Exchange Act, 15 U.S.C. § 78n(f) [2] by failing to file certain information respecting election of directors in November, 1972 with the SEC. Defendants argue that the provisions of § 14(f) are only applicable when a majority of a board is elected without a shareholders' vote, and that in the instant case only three directors, Carter, Graham, and Kaplan, out of a total of thirteen, were elected in November, 1972. Plaintiff contends, however, that four of the directors not up for election in November had agreed to become the designees of Carter, Graham, Carter Group and U&I and that in practical effect, therefore, the prerequisite of the election or designation of a majority of the board was met.

In support of their position, defendants cite the case of Gruss v. Uris Buildings Corp. [1973 Transfer Binder] CCH Fed.Sec.L.Rep. ¶ 94,154 at 94,630 (S. D.N.Y.) which stated that the agreement of five directors to resign, even if they were controlled by the defendants in the case, was not sufficient since they were not in fact "elected or designated" by the defendants. Plaintiff, on the other hand, argues that a formal redesignation or reelection should not be

2. Section 14(f) provides:
    "If, pursuant to any arrangement or understanding with the person or persons acquiring securities in a transaction subject to subsection (d) of this section or subsection (d) of section 78m of this title, any persons are to be elected or designated as directors of the issuer, otherwise than at a meeting of security holders, and the persons so elected or designated will constitute a majority of the directors of the issuer, then, prior to the time any such person takes office as a direc-

tor, and in accordance with rules and regulations prescribed by the Commission, the issuer shall file with the Commission, and transmit to all holders of record of securities of the issuer who would be entitled to vote at a meeting for election of directors, information substantially equivalent to the information which would be required by subsection (a) or (c) of this section to be transmitted if such person or persons were nominees for election as directors at a meeting of such security holders."

necessary where four of the present directors had in fact agreed to become the controlled directors of Carter et al.

If the allegations of plaintiff are taken as true, as they must be for the purposes of this motion, it would seem that plaintiff has stated a sufficient cause of action under § 14(f). Since an actual change in control would have taken place, the reporting requirements presumably were or may have been triggered.

## III

The conduct of the defendants is attacked in count 3 of the complaint on the grounds that it is violative of §§ 8(b) and 13(a) of the Investment Company Act, 15 U.S.C. §§ 80a–8(b) and 80a–13(a).[3] Defendants, however, correctly point out that Coach Lines did not change its subclassification from a "diversified" to a "non-diversified" investment company, in violation of § 13(a)(1). In order for a company to be a non-diversified company, it must invest less than 75 percent of its assets in "diversified" investments, 15 U.S.C. § 80a–5(b). No such allegation is made concerning Coach Lines.

For ought that appears in the complaint, Coach Lines abided by the terms of its registration statement and did not engage "in the concentration of investments in particular industries". Complaint ¶ 37. As stated in the SEC's guidelines for form N–8B–1, the official form for registrations like the instant one, 25 percent of the registrant's assets must be invested in one industry in or-

3. Section 8(b) provides:

"Every registered investment company shall file with the Commission, within such reasonable time after registration as the Commission shall fix by rules and regulations, an original and such copies of a registration statement, in such form and containing such of the following information and documents as the Commission shall by rules and regulations prescribe as necessary or appropriate in the public interest or for the protection of investors:

(1) a recital of the policy of the registrant in respect of each of the following types of activities, such recital consisting in each case of a statement whether the registrant reserves freedom of action to engage in activities of such type, and if such freedom of action is reserved, a statement briefly indicating, insofar as is practicable, the extent to which the registrant intends to engage therein: (A) the classification and subclassifications, as defined in sections 80a–4 and 80a–5 of this title, within which the registrant proposes to operate; (B) borrowing money; (C) the issuance of senior securities; (D) engaging in the business of underwriting securities issued by other persons; (E) concentrating investments in a particular industry or group of industries; (F) the purchase and sale of real estate and commodities, or either of them; (G) making loans to other persons; and (H) portfolio turn-over (including a statement showing the aggregate dollar amount of purchases and sales of portfolio securities, other than Government securities, in each of the last three full fiscal years preceding the filing of such registration statement);
(2) a recital of all investment policies of the registrant, not enumerated in paragraph (1) of this subsection, which are changeable only if authorized by shareholder vote;
(3) a recital of all policies of the registrant, not enumerated in paragraphs (1) and (2) of this subsection, in respect of matters which the registrant deems matters of fundamental policy; . . . ."

Section 13(a) provides:

"No registered investment company shall, unless authorized by the vote of a majority of its outstanding voting securities—
(1) change its subclassification as defined in section 80a–5(a)(1) and (2) of this title or its subclassification from a diversified to a non-diversified company;
(2) borrow money, issue senior securities, underwrite securities issued by other persons, purchase or sell real estate or commodities or make loans to other persons, except in each case in accordance with the recitals of policy contained in its registration statement in respect thereto;
(3) deviate from its policy in respect of concentration of investments in any particular industry or group of industries as recited in its registration statement, deviate from any investment policy which is changeable only if authorized by shareholder vote, or deviate from any policy recited in its registration statement pursuant to section 80a–8(b)(3) of this title; or
(4) change the nature of its business so as to cease to be an investment company."

der for investments to be termed "concentrated". 3 CCH Fed.Sec.L.Rep. ¶ 51,301 at 39,279. Plaintiff has not suggested that Coach Lines' assets were so invested; hence, defendants correctly argue that this portion of count 3 is legally insufficient on its face.

■ Another of plaintiff's claims in count 3 is that as of May 30, 1973, Coach Lines had "commenced to change the nature of its business so as to cease to be an investment company." Complaint ¶ 47. Section 13(a)(4), however, only refers to the cessation of a company to be an investment company. It is not enough that Coach Lines may have been "commencing to cease"; plaintiff does not dispute that as of May 30, 1973, the date in issue, Coach Lines was still an investment company.

The registration statement of Coach Lines provided that Coach Lines' investments would be limited during the trustee's tenure [4] to "secure investments, such as bank certificates of deposit, government securities or rated commercial paper" and that there would be no investments in voting equity securities. Complaint ¶ 37. According to plaintiff, the defendants caused Coach Lines to go outside this policy without prior authorization by shareholder vote, and to buy 10 percent of the common stock of Elgin National Industries, Inc. ("Elgin"). The registration statement also provided that "the Trustee reserves the right to cause Registrant to do any or all of the aforesaid [i. e. go outside the expressed limitations] if he deems it in the best interests of the Registrant." Defendants' Brief at 23. Defendants argue, therefore, that Coach Lines did not violate § 13(a)(3) by deviating from its investment policy.

■■ The discretion of the Trustee, however, cannot have been unfettered, and there is certainly a triable issue of fact as to whether or not the purchase of the stock of Elgin could be deemed to be in the best interests of Coach Lines. Moreover, any subsequent authorization of a departure from the registration statement by the shareholders is not sufficient to expunge a violation of § 13(a)(3). To the extent that count 3 focuses on this aspect of a deviation from the policy expressed in the registration statement, it is a legally sufficient claim and thus is not dismissed.[5]

### IV

■ In count 4, violations of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14a–9 thereunder, 17 C.F.R. § 240.14a–9,[6] are alleged. Plaintiff argues that the defendants breached these provisions by making inadequate disclosures in the May 18, 1973 solicitation of proxies from the Coach Lines' shareholders. It is established law that a private claim can be based on a violation of the proxy rules promulgated under § 14(a). J. I. Case Co. v. Borak Inc., 377 U.S. 426, 84 S.Ct. 1555, 12 L. Ed.2d 423 (1964). The damage complained of, however, must be causally re-

---

4. As stated, the trustee's tenure ended in June, 1972, but the same registration remained in effect through May, 1973.

5. The charges dealing with § 13(d) of the Securities Exchange Act, 15 U.S.C. § 78m (d), are also not dismissed.

6. 17 C.F.R. § 240.14a–9 provides as follows: "(a) No solicitation subject to this regulation shall be made by means of a proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

(b) The fact that a proxy statement, form of proxy or other soliciting material has been filed with or examined by the Commission shall not be deemed a finding by the Commission that such material is accurate or complete or not false or misleading, or that the Commission has passed upon the merits of or approved any statement contained therein or any matter to be acted upon by security holders. No representation contrary to the foregoing shall be made."

lated to the violation in question, and the information misstated or omitted must be material.

■ According to plaintiff, defendants violated Rule 14a–9 by failing to disclose material facts concerning the proposal that Coach Lines change its fundamental investment policies and cease to be a registered investment company. Specifically, plaintiff argues that the shareholders had a right to know that Coach Lines had already begun to acquire the stock of Elgin and was intending to acquire the company itself. Moreover, plaintiff believes that the proposed change might have been defeated, if the nature of the existing management and its present or potential conflicts of interest had been known. The complaint further states that the defendants violated the proxy requirements by failing to disclose the fact that the thirteen nominees for directors were the candidates of the new management of Coach Lines, and that, if elected, they also would be subjected to conflicts of interest.

Taking as true plaintiff's allegations, it would seem clear that plaintiff has sufficiently stated a claim under § 14(a). By the terms of § 20(a) of the Investment Company Act, 15 U.S.C.A. § 80a–20(a), and Rule 20a–1(a), 17 C.F.R. § 270.20a–1, any violation of § 14(a) of the Exchange Act is a violation of § 20(a). In count 4, therefore, plaintiff has also sufficiently alleged noncompliance with § 20(a).

## V

■ The issue concerning count 5 is whether or not plaintiff has standing to bring a private claim under § 35(d) of the Investment Company Act, 15 U.S.C. § 80a–34(d). In substance, this section makes it unlawful for a registered investment company to adopt a name which the SEC has found by order to be deceptive. Under § 35(d), "[t]he Commission is authorized to bring an action . . . alleging that the name or title of any registered investment company . . . is materially deceptive or misleading." If the court so finds, it must enjoin the continued use of the misleading name or title.

Plaintiff believes that the adoption by Coach Lines of the name "The South Bay Corporation" violated § 35(d). Defendants argue that the name has not been found deceptive by the SEC and that § 35(d) authorizes actions only by the SEC. In Taussig v. Wellington Fund, Inc., 313 F.2d 472 (3d Cir.), cert. denied, 374 U.S. 806, 83 S.Ct. 1693, 10 L.Ed.2d 1031 (1963), this same issue was discussed. The court opined that the contention that the use of the name "Wellington" could be the subject of a private action or claim in a federal court was a substantial one. The fact that the federal claim was substantial justified the district court in taking pendent jurisdiction over the common-law claim which also was based on the misuse of the name "Wellington". Since the district court had granted the relief sought solely on the common-law, it was unnecessary for the court in Taussig to determine finally whether or not § 35(d) gave rise to a private claim or cause of action in a federal court.

In Taussig, the major stumbling block perceived by the court to the creation of a private right was that the plaintiffs were not stockholders of the company whose name was challenged. In the instant case, however, Monheit is a stockholder, and it is clear that he is a member of the class which the statute was designed to protect. It may well be proper, therefore, to permit a private cause of action to secure effective enforcement of the statute. See, J. I. Case Co. v. Borak, Inc., supra; Brown v. Bullock, 294 F.2d 415 (2d Cir. 1961). Even assuming that a private right were not created by § 35(d), however, this court can take pendent jurisdiction of the issues raised in this count since the claim is sufficiently related to the other federal claims pleaded in the complaint. United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

## VI

■ Section 10(a) of the Investment Company Act, 15 U.S.C. § 80a–10(a), states that "[n]o registered investment company shall have a board of directors more than 60 percentum of the members of which are persons who are interested persons of such registered company." In count 6, plaintiff alleges that eight of the thirteen directors of Coach Lines were interested directors and that this section, therefore, was violated. Defendants, on the other hand, argue that neither Scheiber nor Scheinman was interested and state that under § 2(a)(9) of the Investment Company Act, 15 U.S.C. § 80a–2(a)(9), they must be presumed not to be controlled persons. Under § 2(a)(19) and § 2(a)(3) of this Act, 15 U.S.C. §§ 80a–2(a)(19), 80a–2(a)(3), however, the term "interested person" is broadly defined. Cf. Coran v. Thorpe, 42 Del.Ch. 67, 203 A.2d 620 (1964). Although plaintiff may in fact be unable to prove that 60 percent of the directors were interested, it would be inappropriate to dismiss count 6 at this stage before plaintiff has had a chance to prove his allegations.

## VII

In count 8 of the Complaint, plaintiff alleges that the defendants breached their fiduciary duty to Coach Lines. More specifically, plaintiff attacks the purchase and renewal of certificates of deposits from the Security National Bank ("Security"). According to plaintiff, these purchases were made "[d]uring the period June 16, 1972 to May 30, 1973 and continuing thereafter", (Complaint ¶ 89), and totaled in excess of $2,000,000. During this same period of time, plaintiff asserts that the defendants also "caused approximately $4 million of Coach Lines' assets to be used to acquire common stock of Elgin and Common stock of other companies." Complaint ¶ 90.

In plaintiff's view, the purchase and renewal of the certificates was improper because it was "in consideration of loans or loan commitments and advances thereunder, made or to be made by Security to Carter, Graham, U & I Corp., Colonial, and/or to other affiliated persons of Coach Lines or of Carter, Graham, and U & I Corp." Complaint ¶ 91. In effect, plaintiff argues, Coach Lines was indirectly making loans to its affiliates and that it was not in the best interests of Coach Lines to hold such certificates. Furthermore, plaintiff asserts that the purchases violated the fundamental investment policies set forth in Coach Lines' registration statement.

Plaintiff asserts that the acquisition of the stock of Elgin and certain other companies was also violative of Coach Lines' fundamental policies and, again, that the purchases were made to further the interests of the defendants at the expense of Coach Lines.

Under § 17(d) of the Investment Company Act, 15 U.S.C. § 80a–17(d), it is "unlawful for any affiliated person . . . or any affiliated person of such a person . . . to effect any transaction in which such registered company, or a company controlled by such registered company, is a joint or a joint and several participant with such person . . . in contravention of such rules and regulations as the Commission may prescribe for the purpose of limiting or preventing participation by such registered or controlled company on a basis different from or less advantageous than that of such other participant." Rule 17d–1, 17 C.F.R. § 270.-17d–1, forbids such joint arrangements unless the approval of the SEC has been secured. Section 48(a) of the Investment Company Act, 15 U.S.C. § 80a–47(a), makes it unlawful to do "through or by means of any other person" that which it would be unwawful for the person to do directly.

■ Coach Lines did not secure the approval of the SEC before it purchased and renewed the certificates of Security. If plaintiff can prove that the transactions with Security were in fact effected by the affiliated persons of Coach Lines

342

and Coach Lines to the detriment of the latter, then a violation of § 17(d) will have been established. Since this court will in any event take pendent jurisdiction over the claims stated in this count, it is not really necessary for this court to hold that a violation of § 17(d) gives rise to a private cause of action. Nevertheless, it would seem, reasoning by analogy to Brown v. Bullock, *supra*, that a private cause of action should be permitted in this situation.

 Even if imprudent, the acquisition of Elgin stock may well not constitute a violation of the Investment Company Act. Although plaintiff cites § 37 of this Act, 15 U.S.C. § 80a–36, he does not allege, as was alleged in Brown v. Bullock, *supra*, any acts which would constitute larceny, embezzlement, or willful conversion. This section, therefore, unlike in Brown v. Bullock, *supra*, is inapplicable. Section 36(a) of the Investment Company Act, 15 U.S.C. §80a–35 (a), authorizes the SEC to bring actions against certain individuals or companies for breaches of fiduciary duty involving personal misconduct. Section 36(a), however, authorizes an action by the SEC, not by private individuals. Although this should not be read to prohibit suits by individuals when other sections of the Investment Company Act are violated, when only a general breach of fiduciary duty is alleged, a private suit should more properly be brought in state court. Even if this claim is a state claim, however, this court will take pendent jurisdiction over it in this case.

### VIII

 In count 9 of his complaint, plaintiff alleges a violation of § 10(b) of the Act, 15 U.S.C. § 78j(b) and Rule 10b–5, 17 C.F.R. § 240.10b–5, and seeks injunctive relief. Admittedly, plaintiff was neither a purchaser nor a seller of the shares of Coach Lines during the period of time in question; but where only injunctive relief is sought this is not essential. Mutual Shares Corp. v. Genesco, Inc., 384 F.2d 540 (2d Cir. 1967). Although the relief sought by plaintiff

in this count is perhaps more properly sought under other counts of this Complaint, plaintiff has, at this stage, sufficiently alleged a cause of action under § 10(b).

### IX

Count 10, the derivative count, need not be discussed separately in that defendants have not specifically dealt with it in their motion papers, presumably on the theory that it will stand or fall to the extent the other counts do upon this motion.

Thus, excepting certain allegations in count 3 heretofore discussed, defendants' motions to dismiss certain counts in the Complaint are denied. It is so ordered.