## Patricia DANDORPH

v.

## FAHNESTOCK & COMPANY.

Civ. No. B-77-231.

United States District Court,
D. Connecticut.

Jan. 9, 1979.

Mark Oppenheimer, Newtown, Conn., for plaintiff.

Paul W. Orth, Peter B. Sullivan, Nancy B. Lukingbeal, Hoppin, Carey & Powell, Hartford, Conn., for defendant.

ELLEN B. BURNS, District Judge.

## RULING ON DEFENDANT'S MOTION TO DISMISS

Plaintiff, a resident of Connecticut, brings this action against defendant, a registered broker dealer and investment advisor with its principal place of business in New York. Plaintiff's second amended complaint cites three counts, two based on the federal securities law and one based on pendent state jurisdiction, for the actions of defendant's employee, Frank M. Iannotti. Count One alleges that through its employee defendant caused excessive trading and received excessive commissions with respect to plaintiff's account, in violation of Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j) and Section 17 of the Securities Act of 1933 (15 U.S.C. § 77q(a)). Count Two, the pendent state claim, alleges that defendant breached its fiduciary duty to plaintiff by issuing a $1500 check to plaintiff which was endorsed by a person unknown to plaintiff and by failing to account to plaintiff for $3,663.54 to be used for the purchase of stock. Count Three reiterates the facts described in Counts One and Two and alleges that such activities constitute a breach of duty in violation of Section 36(2) of the Investment Company Act of 1940 (15 U.S.C. § 80a–35(a)).

Jurisdiction is invoked under 15 U.S.C. §§ 77v and 78aa and 28 U.S.C. §§ 1331, 1332 and 1337. The defendant, in a Motion to

Dismiss, which the court will treat as a Motion for Summary Judgment in light of the affidavits submitted,[1] claims that plaintiff's right to maintain this action is barred by the Statute of Limitations as to all three counts and that plaintiff lacks standing to sue as to Count III.

The activities alleged in Count One commonly are referred to as "churning." *See generally Van Alen v. Dominick, Inc.,* 560 F.2d 547 (2d Cir. 1977); *Carras v. Burns,* 516 F.2d 251 (4th Cir. 1975); *Fey v. Walston & Co., Inc.,* 493 F.2d 1036 (7th Cir. 1974); *Landry v. Hemphill, Noyes & Co.,* 473 F.2d 365 (1st Cir.), *cert. denied,* 414 U.S. 1002, 94 S.Ct. 356, 38 L.Ed.2d 237 (1973); *Kravitz v. Pressman, Frolich & Frost, Inc.,* 447 F.Supp. 203 (D.Mass.1978); Note, Churning by Securities Dealers, 80 *Harv.L. Rev.* 869 (1967). "Churning" is actionable under Section 10(b) of the 1934 Act[2] and Rule 10b–5 of the Securities and Exchange Commission.[3] In the absence of a federal statute of limitations, the appropriate statute of the forum state applies. *Auto Workers v. Hoosier Cardinal Corp.,* 383 U.S. 696, 703–04, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966). In the District of Connecticut, the law is settled that the applicable state statute is Conn.Gen.Stat. § 36–346(e),[4] which bars suits more than two years after the contract of sale for securities. *Hitchcock v. deBruyne,* 377 F.Supp. 1403 (D.Conn.1974).[5] The activities alleged in Count One oc-

---

1. At oral argument on December 11, 1978, defendant submitted photocopies of an affidavit of Guy Hogarth, General Manager of defendant's office in New Haven, Connecticut; the original affidavit was filed on December 14, 1978. Plaintiff on December 21, 1978, submitted, with a supplemental memorandum, her counteraffidavit. Defendant requested at oral argument that under Fed.R.Civ.P. 56, its Motion to Dismiss be treated as a Motion for Summary Judgment. However, this opinion will cite the parties' documents as originally labelled; wherever mentioned, references to the motion to dismiss will be construed as a motion for summary judgment.

2. 15 U.S.C. § 78j reads in pertinent part:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

. . . . .

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

3. 17 C.F.R. § 240.10b–5 reads in full:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

4. This statute was recently repealed by Conn. Pub.Act 77–482, § 21. However, § 36–346(e), effective from July 1, 1967, to October 1, 1977, governs in the instant case. *See Bohun v. Kinasz,* 124 Conn. 543, 547, 200 A. 1015 (1938) (statute of limitations in effect at time of filing controls). Moreover, it is interesting to note that the new statute of limitations, Conn. Pub.Act 77–482, § 30(e), retains the same language and time frame as in Conn.Gen.Stat. § 36–346(e).

5. Connecticut's position conforms with that of a slight majority of Circuits which have ruled that in securities cases involving fraudulent dealings, the applicable statute of limitations is that in the state Blue Sky Act, rather than the statute of limitations for torts. *E. g.,* Second Circuit, *Berry Petroleum Co. v. Adams & Peck,* 518 F.2d 402, 409 (2d Cir. 1975); Fifth Circuit, *Hudak v. Economic Research Analysts, Inc.,* 499 F.2d 996, 1000 (5th Cir. 1974), *cert. denied,* 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975); Seventh Circuit, *Parrent v. Midwest Rug Mills, Inc.,* 455 F.2d 123, 125–28 (7th Cir. 1972); *Schaefer v. First National Bank of Lincolnwood,* 509 F.2d 1287, 1294–95 (7th Cir. 1975), *cert. denied,* 425 U.S. 943, 96 S.Ct. 1682, 48 L.Ed.2d 186 (1976), and *LaRosa Building Corporation v. Equitable Life Assurance Society of the United States,* 542 F.2d 990, 991–93 (7th Cir. 1976); and Eighth Circuit, *Vanderboom v. Sexton,* 422 F.2d 1233, 1236–39 (8th Cir.), *cert. denied,* 400 U.S. 852, 91 S.Ct. 47, 27 L.Ed.2d 90 (1970), and *In re Alodex Corpora-*

curred between August 30, 1973 and September 30, 1974. Plaintiff's first complaint was filed on July 28, 1977, some thirty-four months after the last transaction. Under a strict application of Conn.Gen.Stat. § 36–346(e), plaintiff's complaint would be time-barred. However, in *Long v. Abbott Mortgage Corp.,* 424 F.Supp. 1095 (D.Conn.1976), the court held that the more lenient tolling principles used in federal securities matters would apply: "These strong federal interests will be better served by a uniform federal tolling policy that does not penalize plaintiffs for the time delays caused by the frauds they suffer, but instead tolls the running of the statute of limitations *at least until the wrong should reasonably have been discovered." Id.* at 1099 (emphasis added). Plaintiff knew or reasonably should have known of defendant's alleged "churning" at least by December 30, 1974. On that date, plaintiff's former counsel, Attorney David Grossman, of Brookfield, Connecticut, wrote a letter to defendant in which he set forth plaintiff's complaints against defendant and indicated that a copy was mailed to plaintiff. Plaintiff has not responded to defendant's request for admission that Attorney Grossman represented plaintiff in connection with the claims forming the basis of this action, that he was authorized by the plaintiff to present said claims to the defendant, that Mr. Grossman was acting within the scope of his authority in writing the letter and that the letter is genuine and, therefore, these statements are deemed admitted. F.R.Civ.Proc. 36. Notwithstanding plaintiff's statement in her affidavit that Attorney Grossman "did not . . . mention" to her that she had "a possible claim for 'churning' ", the knowledge of her attorney is imputed to her so that she knew or reasonably should have

known of the situation at least by late December, 1974.[6] Even applying the liberal tolling principles enunciated in *Long,* plaintiff has failed to file her complaint within two years of the latest date by which she discovered the wrong.

Plaintiff, however, argues that because "churning" is more repulsive than other forms of manipulative, deceptive, or fraudulent practices, the relevant statute of limitations should be the state statute governing fraud, rather than the statute of limitations within a Blue Sky Act.[7] This court refuses to rank which deceptive and manipulative practices are more offensive to the strong federal securities policy than others. In *Corey v. Bache & Co., Inc.,* 355 F.Supp. 1123 (S.D.W.Va.1973) an argument similar to that of plaintiff here was rejected. There the court held that in a "churning" case, the state two-year Blue Sky statute of limitations "best effectuates the federal securities laws," rather than the six-year statute of limitations for fraud. *Id.* at 1126. This approach seems most reasonable, for it would be incongruous to allow certain plaintiffs with 10(b) and 10b–5 claims to have three years in which to sue, under Conn.Gen.Stat. § 52–577, while other plaintiffs with similar claims would be allowed only two years.

▪ Accordingly, defendant's motion as to Count One is granted since plaintiff's complaint was filed beyond the two-year statute of limitations established in Conn. Gen.Stat. § 36–346(e).

▪ Count Three, which also concerns federal law, should be considered next, for, if this court lacks jurisdiction over both federal claims, it may lack jurisdiction over the pendent state claims. This count,

---

*tion Securities Litigation,* 533 F.2d 372, 373–74 (8th Cir. 1976). A slight minority of the circuits have held that the applicable statute of limitations is that for commonlaw fraud. *E. g.,* Sixth Circuit, *IDS Progressive Funds, Inc. v. First of Michigan Corp.,* 533 F.2d 340, 342–44 (6th Cir. 1976); Ninth Circuit, *United California Bank v. Salik,* 481 F.2d 1012, 1014–15 (9th Cir.), *cert. denied,* 414 U.S. 1004, 94 S.Ct. 361, 38 L.Ed.2d 240 (1973); Tenth Circuit, *Clegg v. Conk,* 507 F.2d 1351, 1353 (10th Cir. 1974),

*cert. denied,* 422 U.S. 1007, 95 S.Ct. 2628, 45 L.Ed.2d 669 (1975).

6. The period surrounding December 30, 1974 is the latest conceivable date by which plaintiff first could have learned of her claims; presumably she knew of them at an earlier date since she knew enough to seek the advice of counsel.

7. *See* note 5 supra.

brought under Section 36(2) of the Investment Company Act of 1940 (15 U.S.C. § 80a–35(a)), should also be dismissed. The court need not determine the applicable statute of limitations because plaintiff, as a non-shareholder, lacks standing to sue under Section 36(2) of the 1940 Act. The federal courts are nearly unanimous in holding that individuals have an implied right of action under Section 36, in the absence of explicit statutory authorization. *E. g., Moses v. Burgin,* 445 F.2d 369, 373 (1st Cir.), *cert. denied sub nom. Johnson v. Moses,* 404 U.S. 994, 92 S.Ct. 532, 30 L.Ed.2d 547 (1971); *Esplin v. Hirschi,* 402 F.2d 94, 103 (10th Cir. 1968), *cert. denied,* 394 U.S. 928, 89 S.Ct. 1194, 22 L.Ed.2d 459 (1969); *Tanzer v. Huffines,* 314 F.Supp. 189, 194–95 (D.Del.1970); *Brown v. Bullock,* 194 F.Supp. 207, 245–46 (S.D.N.Y.), *aff'd on other grounds,* 294 F.2d 415 (2d Cir. 1961).[8] In all these suits, plaintiffs were shareholders in the investment company. This court finds persuasive the reasoning of the Southern District of New York which repeatedly held that a plaintiff who does not hold stock in the investment company lacks standing to sue under the Investment Company Act. *E. g., Goodall v. Columbia Ventures, Inc.,* 374 F.Supp. 1324, 1328 (S.D.N.Y.1974); *Herman v. Steadman,* 50 F.R.D. 488, 489–90 (S.D.N.Y.1970); *Weiner v. Winters,* 50 F.R.D. 306, 310–11 (S.D.N.Y.1970); *General Time Corp. v. American Investors Fund, Inc.,* 283 F.Supp. 400, 401–02 (S.D.N.Y.), *aff'd on other grounds sub. nom. General Time Corp. v. Talley Industries, Inc.,* 403 F.2d 159 (2d Cir. 1968), *cert. denied,* 393 U.S. 1026, 89 S.Ct. 631, 21 L.Ed.2d 570 (1969). As the court explained:

> The Investment Company Act was designed to provide a comprehensive regulatory scheme to correct and prevent abusive practices in the management of investment companies. Congress intended this protection to be for the benefit of persons having an interest in those companies. While the Act itself does not specifically provide any private right of action, such right has been implied by the courts. . . . Standing to assert claims under the Investment Act extends to any person holding any ownership interest in a company subject to the Act. . . . *But where persons who are not shareholders have sought to object to a registered company's conduct, standing has been denied.*

*General Time Corp. v. American Investors Fund, Inc., supra,* 283 F.Supp. at 401–02 (emphasis added) (citations omitted). Accordingly, plaintiff, who is not a shareholder in the defendant organization, lacks standing to bring an action under the 1940 Act.

 The final matter to be resolved is plaintiff's Count Two, whose nature is difficult to ascertain. In her second amended complaint, plaintiff speaks in terms of breach of fiduciary duty. In her Memorandum of Law in Opposition to Defendant's Motion to Dismiss, filed November 27, 1978, plaintiff states that the second count is "based upon pure fraud" but then describes defendant's actions as a conversion. At oral argument, and in a Supplemental Memorandum, filed December 21, 1978, plaintiff has described her claim as an accounting. The categorization of plaintiff's second count could prove crucial, for under Conn.Gen.Stat. § 52–577, the statute of limitations for torts (such as fraud or conversion) is three years, whereas the length of time in which to bring an action for an accounting, under Conn.Gen.Stat. § 52–576, is six years. A corollary dilemma develops as to when the cause of action arises: the $1500 check was issued to plaintiff on February 19, 1974 but a copy was not delivered to her until January 10, 1975;

---

8. The one exception seems to be *Monheit v. Carter,* 376 F.Supp. 334 (S.D.N.Y.1974), in which the court stated:

> Section 36(a) . . . authorizes an action by the SEC, not by private individuals. Although this should not be read to prohibit suits by individuals when other sections of the Investment Company Act are violated, *when only a general breach of fiduciary duty is alleged, a private suit should more properly be brought in state court.*

*Id.* at 342 (emphasis added). The *Monheit* court retained pendent jurisdiction, *id.,* due to other viable federal claims under the 1940 Act.

plaintiff delivered $5,250.00 to defendant in April, 1974, of which defendant deposited $1,586.46 in plaintiff's account on June 6, 1974, the balance remaining unaccounted for. Connecticut's statutory and common-law law provides for tolling in certain torts and accounting cases. *E. g.*, Conn.Gen.Stat. § 52-595 (fraud); *Zimmerer v. General Electric Co.*, 126 F.Supp. 690 (D.Conn.1954) (fraud); *Rosenblatt v. Berman*, 143 Conn. 31, 119 A.2d 118 (1956) (fraud); *Kennedy v. Johns-Manville Sales Corp.*, 135 Conn. 176, 62 A.2d 771 (1949) (fraud); *Weadon v. First National Bank & Trust Co.*, 129 Conn. 541, 29 A.2d 779 (1943) (accounting); *McDonald v. Hartford Trust Co.*, 104 Conn. 169, 132 A. 902 (1926) (accounting); *Nikolas v. Michaelis*, 7 Conn.Supp. 405 (Super.Ct.1939) (conversion); *Viets v. Marks*, 10 Conn.Supp. 367 (C.P.1942) (accounting). However, this court need not select the applicable statute of limitation, nor determine when the statute began to run, since the federal court, having dismissed the federal claims, should not assume pendent jurisdiction over this state claim. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). As plaintiff conceded in her Supplemental Memorandum, filed December 21, 1978, "If the Plaintiff's action under the Federal Securities Act is dismissed as requested, lacking any other independent grounds for federal jurisdiction, admittedly it would be inappropriate for this Court to retain pendent jurisdiction over the related state claim, which, if dismissed, shall be brought before the state court." This court, in exercising the discretion authorized in *Gibbs,* refuses to retain jurisdiction over the pendent state claim, especially in light of plaintiff's concession.

Accordingly, summary judgment is entered for the defendant as to all three counts.

SO ORDERED.