James P. CHAPMAN and Elsie B. Chapman, Plaintiffs,

v.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Defendant.

Civ. No. H–82–2286.

United States District Court, D. Maryland.

April 24, 1984.

N. Barton Benson, Jr. and Howard J. Needle, Towson, Md., for plaintiffs.

David F. Albright, G. Randall Whittenberger and Semmes, Bowen & Semmes, Baltimore, Md., for defendant.

### MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, District Judge.

Before the Court in this civil action are defendant's motion for summary judgment and defendant's motion to strike the affidavits of plaintiffs James and Elsie Chapman, which have been filed in support of plaintiffs' opposition to the pending motion for summary judgment. Extensive memoranda in support of and in opposition to these motions have been filed and reviewed by the Court. In a sixteen-page Memorandum and Order dated July 19, 1983, this Court, in ruling on earlier motions filed by the parties, discussed the issues presented in this case at some length. More recently, at a conference held in chambers on March 6, 1984, counsel for the parties presented arguments in support of and in opposition to defendant's pending motion for summary judgment.

Under all the circumstances, this Court concludes that no formal hearing is necessary for a decision on the pending motions. *See* Local Rule 6. For the reasons to be stated herein, defendant's motion to strike plaintiffs' affidavits will be denied, and defendant's motion for summary judgment will be granted.

In this suit seeking damages under federal securities law, plaintiffs, a husband and wife, claim that they have suffered losses as a result of various securities transactions executed on their behalf by their stockbroker, defendant Merrill Lynch, Pierce, Fenner & Smith (hereinafter "Merrill Lynch"). In their five-count complaint, plaintiffs sought damages under (1) the Securities Exchange Act of 1934 (hereinafter "the Act") and the rules promulgated thereunder (Counts I and IV); (2) the rules of the New York Stock Exchange (Count II); (3) the rules of Fair Practice of the National Association of Securities Dealers (Count III); and (4) a theory of negligence asserted under the common law of Maryland (Count V). In its Memorandum and Order of July 19, 1983, this Court dismissed Counts II, III and V, and that part of Count IV which sought recovery under Section 15(c)(1) of the Act and Rule 15c2–5 promulgated thereunder by the Securities and Exchange Commission. As a result, the only claims remaining for adjudication in this case are those based on alleged violations of Rule 10(b) of the Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 340.10b–5. These claims are asserted in Counts I and IV of the complaint.

I

*Defendant's Motion to Strike
Plaintiffs' Affidavits*

In support of their opposition to defendant's motion for summary judgment, each plaintiff has filed herein an affidavit containing various factual assertions. Defendant thereafter filed a motion to strike these affidavits on two grounds, namely (1) that

the affiants failed to assert personal knowledge of the matters set forth in the affidavits, and (2) that the affiants are not competent to testify as to certain matters set forth in the affidavits.

On March 6, 1984, plaintiffs filed amended affidavits stating that the factual allegations set forth are based on the personal knowledge of the affiants. At the status conference held that same day, the Court directed counsel for defendant to file a response to the amended affidavits within one week. On March 7, 1984, defendant filed an opposition to the use of the amended affidavits, and plaintiffs responded in a memorandum filed on March 13, 1984.

Both affidavits include brief descriptions of the manner in which customer grievances are handled at International Business Machines Corporation (hereinafter "IBM") which is the employer of both plaintiffs. Defendant contends that the affidavits fail to lay an adequate foundation for the testimony presented and that this Court should therefore strike them. There is no merit to this contention. The affidavits state that during the time period relevant here, plaintiff James P. Chapman was an Advisory Marketing Representative for IBM and plaintiff Elsie B. Chapman served as a Marketing Manager and Administrative Assistant to the President of the General Systems Division of IBM. As noted, the affiants stated under oath that they have personal knowledge of the matters set forth in their affidavits. This Court is satisfied that as relatively high level employees of IBM, each plaintiff is competent to testify concerning the procedures utilized by IBM to resolve customer grievances. Accordingly, defendant's motion to strike plaintiffs' affidavits will be denied. In ruling on defendant's motion for summary judgment, the Court will therefore consider as a part of the record plaintiffs' amended affidavits.

## II

### Defendant's Motion for Summary Judgment

Defendant previously filed herein a motion to dismiss or for summary judgment wherein defendant argued, *inter alia*, that plaintiffs' claims under both Section 10(b) of the Act and Rule 10b–5 are time-barred. In its Memorandum and Order of July 19, 1983, the Court reviewed the meager facts available at that stage of these proceedings and noted that certain documents relied upon by defendant might well be construed as supporting defendant's position that it was entitled to summary judgment. The Court further observed that under all the circumstances of the case, "the claims asserted by plaintiffs may at a later stage of these proceedings be shown to have been time-barred." (p. 11). However, since there had been no formal discovery undertaken at the time of the earlier rulings, the Court directed the parties to develop the facts by way of discovery and permitted defendant to again raise its limitations defense by way of a motion for summary judgment based upon the expanded record. Accordingly, defendant's motion for summary judgment based on the statute of limitations was denied without prejudice.

Extensive discovery has now been undertaken by the parties. Interrogatories have been filed and answered, documents have been produced and depositions have been taken. Relying on the pleadings and discovery in the case, defendant has renewed its motion for summary judgment, contending that the remaining claims in this suit are barred by limitations. For the reasons to be stated, this Court would agree.

As this Court noted in its previous Memorandum and Order, summary judgment is not appropriate where there are disputed issues of material fact. *See Phoenix Savings & Loan, Inc. v. Aetna Casualty Company*, 381 F.2d 245 (4th Cir.1967). On the other hand, Rule 56(c), F.R.Civ.P., makes it quite clear that summary judgment should be rendered "forthwith" if the pleadings, discovery and affidavits filed in a case show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. One of the purposes of Rule 56 is to require a plaintiff, in advance of trial and

after a motion for summary judgment has been filed by the defendant and supported, to come forward with some minimal facts to show that a defendant may be liable under the claims alleged. *See* Rule 56(e). In the absence of such a minimal showing, a defendant should not be required to undergo the considerable expense of preparing for and participating in a trial. Applying these principles to this case, this Court finds and concludes that defendant here is entitled to judgment on plaintiffs' remaining claims as a matter of law because these claims were not timely brought.

The Fourth Circuit has ruled that the one year statute of limitations in Maryland's blue sky law, Md. Corps. & Ass'ns Code Ann. § 11–703(f) (1983 Cum.Supp.), is applicable to actions brought under Section 10(b) of the Act and Rule 10b–5. *O'Hara v. Kovens*, 625 F.2d 15, 18 (4th Cir.1980), *cert. denied*, 449 U.S. 1124, 101 S.Ct. 939, 67 L.Ed.2d 109 (1981); *Fox v. Kane-Miller Corporation*, 542 F.2d 915, 918 (4th Cir. 1976). The Maryland statute provides that suit must be brought "within one year after the discovery of the untrue statement or omission, or after the discovery should have been made by the exercise of reasonable diligence." As the Fourth Circuit observed in *Fox, supra*, the same rule has been adopted by federal courts in cases involving claims under the Act. *See, e.g., Sleeper v. Kidder Peabody & Company, Inc.*, 480 F.Supp. 1264, 1266 (D.Mass.1979), *aff'd*, 627 F.2d 1088 (1980); *Dandorph v. Fahnestock & Company*, 462 F.Supp. 961 (D.Conn.1979); *Kennedy v. Josephthal & Company, Inc., et al.*, Fed.Sec.L.Rep. (CCH) ¶ 99,187 (D.Mass.1983). Inasmuch as plaintiffs here filed suit in this Court on August 6, 1982, the question presented is whether they knew or should have known of the alleged improprieties prior to August 6, 1981.

■ The undisputed facts material to the limitations issue are as follows. Plaintiffs opened a securities trading account with defendant on or about November 16, 1979. The securities transactions which form the basis for plaintiffs' claims occurred between November, 1979 and December, 1980. Plaintiffs were informed of all transactions by mail, generally from five to fifteen days after the trade date. Plaintiffs also received from defendant monthly account statements.

In a three-page letter dated March 3, 1981, plaintiff James P. Chapman advised Alan Kenzie, the manager of defendant's Baltimore office, that plaintiffs had sustained losses which they felt were the result of improper handling of their account by Frank Shulman, their account executive. The letter set forth plaintiffs' investment objectives and explained in detail how these objectives had not been attained. The letter reviewed various transactions involving bonds, securities and the option market which had been executed on plaintiffs' behalf by Shulman. Additionally, Kenzie was advised in the letter that plaintiffs had discussed the investments made in the option market with another broker who, according to plaintiffs, was appalled at the transactions which had taken place. In answering defendant's interrogatories, plaintiff Elsie Chapman has identified this broker as Joe Howell, an account executive employed by Legg Mason Wood Walker, Inc. in Towson, Maryland. Finally, plaintiffs requested a meeting with Kenzie to discuss their situation and also indicated that they no longer wanted Shulman to handle their account.

Kenzie responded to Chapman's letter by way of a letter dated March 5, 1981. Further correspondence was sent to plaintiffs by defendant's Administrative Manager on or about March 31, 1981. On a date prior to May 7, 1981, plaintiffs met with their attorney, N. Barton Benson, Esq., to discuss the facts pertaining to their dispute with Merrill Lynch. Plaintiffs also corresponded with Benson both on May 7 and June 26, 1981.

On May 26, 1981, Barry Neiburger, the Administrative Manager of defendant's Baltimore office, received a letter from attorney Benson dated May 22, 1981. That letter stated that plaintiffs had retained Benson to seek recovery for losses alleged-

ly sustained in connection with their account. Benson's letter further requested a list of the principal transactions which had occurred, including the total dollar amount involved and the mark-up on the transactions.

These facts clearly show that plaintiffs had knowledge of defendant's allegedly illegal acts before August 6, 1981. The transactions in question commenced in November of 1979, some 30 months before suit was filed. Plaintiffs were notified in writing of each transaction after it took place, and they received from defendant monthly account statements. The information set forth in these notices and statements obviously led to the dissatisfaction expressed in the letter which plaintiff James Chapman wrote to Alan Kenzie on March 3, 1981, some 17 months before suit was filed. As noted, this letter reviewed in detail the Chapmans' complaints concerning the manner in which Shulman had handled their securities account.

The most significant fact of all in the record here is that plaintiffs engaged counsel at least fifteen months before suit was filed in this Court. In a letter dated May 22, 1981, plaintiffs' attorney, N. Barton Benson, Esq., advised the Administrative Manager of defendant's Baltimore office that he had been retained to seek recovery for losses which they had allegedly sustained in their account. This letter was sent some fourteen months before this suit was filed. While the letter from Benson requested from defendant certain information with respect to plaintiffs' account, Benson was quite obviously aware of plaintiffs' belief that they were entitled to a recovery from defendant because of losses in their account. This knowledge was, of course, based on information which had previously been provided by plaintiffs. On September 3, 1981, Benson filed suit against Merrill Lynch on behalf of the plaintiffs in the Circuit Court for Baltimore City, alleging excessive and unauthorized trading. Yet he waited for another 11½ months before filing suit in this Court. Under all of these circumstances, this Court finds and concludes that plaintiffs

knew of the improprieties they have alleged here well before August 6, 1981.

Plaintiffs contend that there are material factual issues which preclude resolution of the issue of limitations in this case by way of summary judgment. First, plaintiffs argue that the March 3, 1981 letter from James Chapman to Kenzie was no more than a consumer complaint. It is further asserted, as stated by plaintiffs in their amended affidavits, that during their conversation with Joe Howell, he never suggested to them that violations of federal securities laws may have occurred. Plaintiffs also stated that Benson was retained to seek an administrative solution to the dispute and that based on their experience as IBM employees, they had concluded that their grievances could be resolved administratively. Plaintiffs point out in their affidavits that customer grievances at IBM are regularly handled administratively and rarely result in litigation. Finally, plaintiffs contend that they were not sophisticated investors, and in their affidavits they assert that the positions held by them at IBM have not required or involved a sophisticated knowledge of the stock market.

■ These facts, if accepted as true, are simply not material to the essential issues presented by defendant's renewed motion for summary judgment. Whether or not plaintiffs could be considered sophisticated investors (and there is substantial evidence in the record to indicate that they were), they had engaged an attorney to press their claims several months before the critical date of August 6, 1981. Attorney Benson is counsel of record for plaintiffs in this case. He was charged with knowledge of the law, including the period of limitations applicable to federal claims of the sort asserted here. Benson had every right to seek an administrative resolution of the dispute. However, he was charged with knowledge that the applicable statute of limitations would not be tolled while he sought to resolve the dispute administratively. Thus, even if plaintiffs did not know or appreciate the significance under

federal law of the statements or omissions of defendant, it is clear that their attorney did. Such knowledge must be imputed to plaintiffs so that their claims are time-barred whatever the degree of their investment sophistication.

In support of its conclusions herein, this Court would rely on *Dandorph v. Fahnestock & Company, supra.* In that case, the plaintiff charged defendant stockbroker, *inter alia,* with a violation of Section 10(b) of the Act and Rule 10b–5. This federal claim was dismissed by the Court on the ground that it had not been brought within the two-year limitations period applicable in Connecticut. Specifically, the Court in *Dandorph* found that plaintiff knew or reasonably should have known of defendant's wrongful acts at least by the date on which plaintiff's former counsel had written a letter to defendant setting forth plaintiff's complaints against the defendant. Plaintiff argued that her claims were not barred by limitations because her attorney had not advised her that she had a possible federal claim against the stockbroker. The Court rejected this argument, holding that the knowledge of plaintiff's attorney was imputed to her and that she therefore knew or should have known of the alleged illegalities. 462 F.Supp. at 964.

The essential facts are the same here as in *Dandorph.* Attorney Benson, as evidenced by his May 22, 1981 letter to the Administrative Manager of defendant's Baltimore office, knew that plaintiff had sustained losses because of defendant's acts or omissions in handling plaintiff's account. This knowledge must be imputed to plaintiffs themselves. Even if they were previously unaware of the alleged fraudulent acts, they are deemed to have known of them by May 22, 1981. Accordingly, the remaining claims of plaintiffs, asserted in Counts I and IV are time-barred.

Plaintiffs have argued that *Dandorph* is inapplicable to this case because the attorney's letter there set forth plaintiff's complaints against the defendant while Benson's letter here did not. Plaintiffs contend that Benson's letter was merely a request for information necessary to determine the existence of a cause of action. Since Benson did not receive a response to his letter until August 26, 1981, plaintiffs argue that their claims asserted under Section 10(b) of the Act and Rule 10b–5 were timely filed.

There is no merit to this argument. Benson's letter of May 22, 1981 stated that he had been retained by plaintiff to seek recovery for losses sustained by them. The basic underlying facts in plaintiffs' possession were certainly known to Benson by that date or he presumably would not have written the letter. Benson was merely attempting to secure more specific information which obviously could have been obtained by way of discovery after suit was filed. Benson knew or should have known on May 22, 1981 that his clients had a claim against Merrill Lynch. The fact that he was seeking more details before filing suit would not result in the tolling of the period of limitations. Since Benson's knowledge of defendant's alleged improprieties must be imputed to plaintiffs, suit was not filed within the one-year period required by the applicable statute of limitations. Summary judgment will accordingly be entered in favor of the defendant. Plaintiffs will be required to seek recovery for their losses in the suit they have filed in the Circuit Court for Baltimore City.

Accordingly, it is this 24th day of April, 1984, by the United States District Court for the District of Maryland,

ORDERED:

1. That defendant's motion for summary judgment be and the same is hereby granted; and

2. That judgment be and the same is hereby entered in favor of the defendant, with costs.